This version includes the errata dated 3Apr08-e

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-1690

MARVIN ROBINSON, APPELLANT,

V.

JAMES B. PEAKE, M.D.,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued May 23, 2007                         Decided   January 29, 2008   )

*Robert V. Chisholm*, of Providence, Rhode Island, argued for the appellant. *James F. Cameron*, of Montgomery, Alabama, was on the brief for the appellant.

*Leslie C. Rogall*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Joan E. Moriarty*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

*William S. Mailander* and *Michael P. Horan,* both of Washington D.C., were on the brief of Paralyzed Veterans of America, as amicus curiae; *Barbara J. Cook*, of Cincinnati, Ohio, was on the brief for the National Organization of Veterans' Advocates, Inc., as amicus curiae; *Landon Overby*, of Washington, D.C., was on the brief for Disabled American Veterans, as amicus curiae; and *John F. Cameron*, of Montgomery, Alabama, was on a supplemental brief, as amicus curiae.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court. SCHOELEN, *Judge*, filed a dissenting opinion.

HAGEL, *Judge*: Before the Court is Marvin Robinson's appeal of a May 17, 2004, Board of Veterans' Appeals (Board) decision in which he was denied service connection on a secondary basis for heart disease and a thyroid disability. In that decision, the Board also remanded the issue of entitlement to an increased disability rating for Mr. Robinson's service-connected peptic ulcer disease. The remanded matter is not before the Court. Because Mr. Robinson has failed to

demonstrate any error in the Board decision or any reason his new theory of entitlement should enjoy the benefit of a discretionary remand from this Court, the Board decision will be affirmed. *See Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000).

## I. FACTS

Mr. Robinson served on active duty in the U.S. Navy from October 1986 to April 1988. In November 1988, he was awarded service connection for peptic ulcer disease effective from the day following the date of his discharge from service.

In December 1998, he filed a claim for VA benefits for, among other things, heart and thyroid conditions, which he asserted had their onset in February 1996. In September 1999, a VA regional office denied him service connection for heart disease and a hyperthyroid condition secondary to his service-connected peptic ulcer disease. Mr. Robinson filed a Notice of Disagreement in November 1999 asserting that he disagreed with the regional office's denial of "service connection for heart disease and hyperthyroid condition as *secondary* to [his] service[-]connected peptic ulcer disease." Record (R.) at 139 (emphasis added). That Notice of Disagreement was submitted along with a letter from attorney John F. Cameron, informing VA that attorney Cameron was being designated as Mr. Robinson's attorney. R. at 141-42. Attorney Cameron asked that multiple documents, including Mr. Robinson's Notice of Disagreement, be associated with Mr. Robinson's claims file.

In October 2001, the Board remanded Mr. Robinson's claims to the regional office for additional development. Specifically, the Board ordered the regional office, among other things, to (1) "arrange for a VA examination by an appropriate specialist in order to determine the nature, severity, and etiology of the thyroid disorder" and (2) "arrange for a VA examination by a cardiovascular specialist in order to determine the nature, severity, and etiology of any cardiovascular disorder." R. at 189-90. The examiner was specifically directed to opine as to whether those conditions were related to or aggravated by Mr. Robinson's service-connected peptic ulcer disease.

The report from a November 2002 VA thyroid and parathyroid diseases examination reflects the examiner's opinion that Mr. Robinson's "chest pain . . . claimed as heart problems . . . was secondary to his [h]yperthyroidism" and that "[t]here is no heart problem that is attributable to his service[-]connected peptic ulcer disease[;] and his thyroid condition . . . is not related to his service-

connected peptic ulcer disease." R. at 697. There is of record a document that purports to be the report from a November 2002 VA heart examination. *See* R. at 698. Under the heading "[e]xamination results," that document states only the following: "Please see the Thyroid/Parathyroid compensation and pensions examination." *Id.*

The Board, in the May 2004 decision now on appeal, denied service connection on a secondary basis for heart disease and a thyroid disability. In so doing, the Board relied on the November 2002 VA examination report, which "found no relationship between the service-connected peptic ulcer disease and the two later arising diseases." R. at 9.

In his brief, Mr. Robinson raises three arguments. First, he contends that the Board violated *Stegall v. West*, 11 Vet.App. 268, 271 (1998), by failing to ensure compliance with the October 2001 Board remand order. In that regard, he argues that the examiner failed to discuss the etiology of the thyroid and cardiovascular conditions, as ordered by the Board. Appellant's Brief (Br.) at 8. His second argument is related to his first–that the Secretary violated the duty to assist by relying on inadequate medical examination reports. *See id.* at 9-10. His third and final argument is that the Board violated *Schroeder v. West*, 212 F.3d 1265 (Fed. Cir. 2000), by failing to adjudicate whether he is entitled to service connection on a direct basis for heart disease and a thyroid disability.

In response, the Secretary contends that Mr. Robinson is challenging the propriety of the November 2002 VA examination for the first time on appeal and that the "Court should refrain from considering such arguments raised for the first time on appeal." Secretary's Br. at 9. He further contends that, should the Court consider the argument concerning the propriety of the November 2002 VA examination, that examination did comply with the Board's prior remand instructions. The Secretary asserts that Mr. Robinson was represented before the Board by the same attorney representing him before the Court and that, as a consequence, the issue should be deemed to have been waived. *Id.* at 13-14. Responding to Mr. Robinson's final argument, the Secretary asserts that Mr. Robinson "has consistently maintained to the [A]gency since the initial filing of his claim in 1998 that he believed his disabilities were caused on a secondary basis by his service-connected disability" and, thus, the Board did not err in failing to adjudicate entitlement to service connection for heart disease and a thyroid disability on a direct basis. *Id.* at 17.

On February 8, 2007, the Court issued an order notifying the parties that it was interested in resolving, among other things, the following two questions raised in this appeal: First, whether or not representation by counsel before the Agency is a factor to be considered in determining whether the Court should apply the exhaustion doctrine to affirm a Board decision rather than adjudicate or remand a new theory of entitlement first raised on appeal. And, second, whether representation by counsel before the Agency has any effect on the Court's analysis of whether VA fulfilled its obligation to consider and decide all issues reasonably raised by the claim. The Court then allowed the parties to file supplemental pleadings addressing these issues. In addition, the Court allowed for the filing of amicus briefs.

In response to that order, the Court received supplemental pleadings from the parties and multiple amicus briefs. The gist of Mr. Robinson's supplemental pleading and the amicus filings is that the Court cannot impose an exhaustion requirement because to do so would violate the principles established in the U.S. Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000). In addition, they argue that the Court should not treat differently appellants represented by counsel and unrepresented appellants and that the U.S. Court of Appeals for the Federal Circuit's decision in *Andrews v. Nicholson*, 421 F.3d 1278 (Fed. Cir. 2005), should be read narrowly to apply only in the context of motions to revise based upon clear and unmistakable error.

In his supplemental pleading, the Secretary argues that the Court can apply the exhaustion doctrine because 38 U.S.C. § 7105(c)(3) provides that an appeal to the Board "should set out specific allegations of error of fact or law." 38 U.S.C. § 7105(c)(3). He further notes that VA's regulation essentially mimics the statute. *See* 38 C.F.R. § 20.202 (2006) ("The Substantive Appeal should set out specific arguments relating to errors of fact or law made by the agency of original jurisdiction in reaching the determination, or determinations, being appealed."). Citing *Andrews*, the Secretary goes on to assert that whether an appellant is represented by counsel is relevant in assessing the Secretary's obligation to read claims sympathetically. The Secretary asserts that, in this case, Mr. Robinson was represented by counsel for the entire six years that his appeal was pending before VA and that, at no time before VA did Mr. Robinson raise arguments regarding service connection on a direct basis. In essence, the Secretary argues that this case is more about a represented appellant's

4

failure to raise arguments than it is about the Secretary's duty to sympathetically read a claim. The Court heard oral argument in this matter on May 23, 2007.

## II. ANALYSIS

### A. Is Mr. Robinson's Argument on Appeal for Service Connection on a Direct Basis for Heart Disease and a Thyroid Disability a Separate Claim for Disability Benefits for Those Conditions?

Our ability to exercise jurisdiction over this appeal hinges on whether Mr. Robinson is advancing a new *claim* or merely a new *argument* in support of his claim. If Mr. Robinson is advancing a new claim, we lack jurisdiction over this appeal because there is no final Board decision on that claim. *See* 38 U.S.C. §§ 7252(a), 7266(a); *see also Breeden v. Principi*, 17 Vet. App. 475, 478 (2004). If, on the other hand, Mr. Robinson is advancing a new argument in support of his claim, then we possess jurisdiction over this appeal and can consider the new argument or remand the matter for the Board to consider it in the first instance. *See Maggitt v. West*, 202 F.3d 1370, 1377-78 (Fed. Cir. 2000) (holding that this Court has discretion to hear arguments presented to it in the first instance, provided that it otherwise has jurisdiction over the claim).

In *Roebuck v. Nicholson*, we held that "although there may be multiple theories or means of establishing entitlement to a benefit for a disability, if the theories all pertain to the same benefit for the same disability, they constitute the same claim." 20 Vet.App. 307, 313 (2006). *Roebuck* built upon our decision in *Bingham v. Principi*, in which we held that "direct and presumptive service connection are, by definition, two means (i.e., two *theories*) by which to reach the same end, namely service connection." 18 Vet.App. 470, 474 (2004), *aff'd*, 421 F.3d 1346 (Fed. Cir. 2005). In affirming *Bingham*, the Federal Circuit recognized that separate theories in support of a claim for a particular benefit are not equivalent to separate claims and that a final denial on one theory is a final denial on all theories. *See Bingham,* 421 F.3d at 1349 ("[W]e similarly cannot recognize an exception [to the rule of finality] based on a purported legal error committed by the Board based on its failure to consider all possible theories that may support a claim.").

There is, however, an early decision in which this Court reached a conclusion unlike the conclusions discussed above. In *Perman v. Brown*, a decision issued before Congress eliminated the

well-grounded-claim requirement by enacting the Veterans Claims Assistance Act of 2000, this Court, without any legal analysis, held that a claim for disability benefits on a theory of secondary service connection is separate and distinct from a claim for disability benefits on a theory of direct service connection for that same disability. 5 Vet.App. 237, 239 (1993). As explained below, the Federal Circuit overruled this holding.

Under the no longer existent well-grounded-claim requirement, VA's duty to assist was not triggered until some evidence was presented in support of each element of the claim. *See Morton v. West*, 12 Vet.App. 477, 486 (1999). It was under the well-grounded-claim requirement that this Court endorsed a theory-by-theory concept of what constitutes a claim. In *Schroeder v. West*, upon which we based our decision in *Bingham*, the Federal Circuit repudiated the theory-equals-claim concept and held that, where a veteran sought benefits for an eye condition and his claim was well grounded based on in-service exposure to Agent Orange, VA's duty to assist was triggered and VA had an obligation to explore all legal theories, including those unknown to the veteran, by which a veteran might be awarded service connection for such disability. 212 F.3d 1265, 1269-71 (Fed. Cir. 2000). *Schroeder*, like the Federal Circuit's subsequent decision affirming our decision in *Bingham*, repudiates the each-theory-equals-a-distinct-claim concept. Although the question in *Perman* arose in the context of whether a Notice of Disagreement had been timely filed, and that opinion has never been explicitly overruled, we conclude that in its decision in *Schroeder* and in affirming our decision in *Bingham*, the Federal Circuit overruled *Perman* sub silencio. The proposition that separate theories in support of a claim for benefits for a particular disability equate to separate claims for benefits for that disability is no longer the law. *See Bingham*, 421 F.3d at 1349; *see also Roebuck*, 20 Vet.App. at 313.

Here, Mr. Robinson, who has been represented by attorney Cameron since the submission of his original Notice of Disagreement in November 1999, has pursued VA benefits for heart disease and a thyroid disability only on a secondary basis–that is, on the theory that those conditions are attributable to his service-connected peptic ulcer disease. In his brief in this appeal, Mr. Robinson contends, for the first time, that he is entitled to service connection for those disabilities on a direct basis and that the Board erred in failing to address service connection on a direct basis. *See* Appellant's Br. at 11-12. In fact, at oral argument, Mr. Robinson even conceded that his claim for

benefits on a secondary basis has no merit and that all that he pursues now is service connection on a direct basis. Because, as explained above, his new argument in support of disability benefits on a direct basis does not constitute a separate claim, we possess jurisdiction over the matter and will consider the argument. *See Maggitt*, 202 F.3d at 1377-78. We now address the issue exhaustion.

B. Did the Board Err in Failing To Discuss Service Connection on a Direct Basis?

Having determined that the appellant's theory may be properly raised to the Court, we turn to the question of whether it was error for the Board not to explicitly address this theory. As explained below, there are two reasons why we are not persuaded by Mr. Robinson's argument that the Board erred in failing to discuss service connection on a direct basis. First, Mr. Robinson's reliance on *Schroeder* is misplaced. And, second, the facts of this case, particularly the fact that Mr. Robinson has been represented by counsel since November 1999, compel us to conclude that the Board did not err in failing to discuss entitlement to disability benefits on a direct basis.

*1. Schroeder Does Not Support Mr. Robinson's Argument*

Mr. Robinson's terse argument in his brief that the Board erred in failing to discuss service connection on a direct basis is premised entirely on the Federal Circuit's decision in *Schroeder*. *See* Appellant's Br. at 11-12. The appellant in *Schroeder* appealed a Board decision denying him service connection for a bilateral eye disorder on a direct basis and as a result of Agent Orange exposure. *See id.* at 1267. On appeal, this Court concluded that the Board had erred in finding the Agent Orange claim not well grounded. This Court, however, affirmed the Board's decision denying service connection on a direct basis on the basis that that "claim" was not well grounded.

As discussed above, the Federal Circuit expressly rejected this Court's decision that two different theories equaled two separate claims and that the duty to assist attached to one theory but not the other. *See supra* pp. 5-6; *Schroeder*, 212 F.3d at 1271 (holding that "once a veteran has properly made . . . a . . . claim for a current disability as a result of a specific in-service occurrence or aggravation of a disease or injury, the agency's duty to assist . . . attaches to the investigation of *all* possible in-service causes of that current disability, including those unknown to the veteran"). Indeed, VA had itself misconstrued the appellant's one claim (based upon two separate theories) as two separate claims. *See Schroeder* 212 F.3d at 1267 ("The agency treated Schroeder's submission as two new claims, one for direct service connection. . . and a second for service connection . . .

associated with Agent Orange exposure . . . ."). VA then denied them both. The ultimate issue was whether those two separate denials could be severed and treated as denials of separate claims, the effect of which would have been that, under the well-grounded-claim requirement then in effect, the duty to assist would have attached to the Agent Orange "claim" and not the direct "claim." In *Schroeder*, the Federal Circuit answered that question in the negative, and our decisions in *Bingham* and *Roebuck* were built on the foundation the Federal Circuit established in *Schroeder*.

Mr. Robinson's case is entirely different. VA has consistently denied Mr. Robinson service connection *on a secondary basis only*. As a consequence, *Schroeder*, which dealt with the Board's denial of a particular benefit claimed on *more than one basis*, does not fit the facts of this case. Nothing in the Federal Circuit's decision in *Schroeder* supports Mr. Robinson's position that the Board is required to explicitly discuss a particular theory. As a consequence, *Schroeder* does not support Mr. Robinson's argument that the Board was required to discuss service connection on a direct basis.

To summarize, the Federal Circuit's ultimate conclusion in *Schroeder* is "well grounded as to one theory, well grounded as to all theories." In other words, the duty to assist applies to the entire claim, which might require assistance in developing more than one theory in support of that claim. *Schroeder* does not address whether VA has an obligation to explicitly discuss sua sponte a particular theory in the first place.

### 2. The Board Did Not Err in Failing To Address All Issues Raised by Mr. Robinson or the Evidence of Record.

Notwithstanding the foregoing, we recognize that, the Board is required to consider all issues raised either by the claimant, *Schroeder*, 212 F.3d at 1271, or by the evidence of record, *Solomon v. Brown*, 6 Vet.App. 396, 402 (1994). Indeed, by regulation, the Board is required to construe an appellant's arguments "in a liberal manner for purposes of determining whether they raise issues on appeal." 38 C.F.R. § 20.202. In addition, the Board is obligated to consider all issues reasonably raised in an appeal. *See Urban v. Principi*, 18 Vet.App. 143, 145 (2004) ("When reviewing [the appellant's] claim, the Board was obligated to consider all reasonably raised matters regarding the issue on appeal."); *Brannon v. West*, 12 Vet.App. 32, 35 (1998) (concluding that the Board must

"adjudicate all issues reasonably raised by a liberal reading of the appellant's substantive appeal including all documents and oral testimony in the record prior to the Board's decision").

Nonetheless, in addressing those theories, the Court has held that the Board is not required to discuss *all* of the evidence of record but rather it must discuss the *relevant* evidence. *Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001); *see also Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991) (Board must discuss, inter alia, all *relevant* evidence). The Court's caselaw in this regard has been affirmed by the Federal Circuit. *See Gonzales v. West*, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (holding that "absent specific evidence indicating otherwise," VA is presumed to have reviewed all evidence in the record when making a determination as to service connection). Even very recently the Federal Circuit reaffirmed that the Board's failure to mention something in its decision does not trigger a presumption that it was not considered. *Newhouse v. Nicholson*, 497 F.3d 1298, 1302 (Fed. Cir. 2007).

The essential logic of all these cases is the same. As a nonadversarial adjudicator, the Board's obligation to analyze claims goes beyond the arguments explicitly made. However, it does not require the Board to assume the impossible task of inventing and rejecting every conceivable argument in order to produce a valid decision. The question of the precise location of the line between the issues fairly raised by the appellant's pleadings and the record and those that are not must be based on the record in the case at hand; therefore, it is an essentially factual question. However, we disagree with the dissent as to the fundamental nature of the line. Our dissenting colleague suggests that "'*all* possible'" causes must be investigated by the Secretary. *Ante* p. 17 (quoting *Schroeder*, 212 F.3d at 1271 (emphasis in original)).

However, Congress has not used such unbounded language. For example, the duty to provide a medical examination as to whether a particular theory of service connection has merit is explicitly limited to situations where there is already some evidence in the record of a current disability and some evidence that "indicates" that the disability "may be associated" with the claimant's military service. 38 U.S.C. § 5103A(d)(2)(B). If Congress had wanted the Secretary to automatically provide an examination on all possible theories, then section 5103A would not read the way it does. In this regard, we note that if the evidence is insufficient to reach the low threshold necessary to trigger the

duty to assist, *see McLendon v. Nicholson*, 20 Vet.App. 79, 83 (2006), then any failure to discuss the theory is necessarily not prejudicial.

Our dissenting colleague supports her belief in the Secretary's duty to investigate all possible theories by suggesting that causes "unknown" to the appellant are those that "could not have been previously raised by the appellant." *Ante* p. 17. This is simply not true. It is entirely possible that the record might "indicate" a theory of entitlement, but that a lay appellant might not be sophisticated enough to recognize the theory. Hence, a theory can be both unknown to the appellant and suggested by the record. *See Ingram v. Nicholson*, 21 Vet.App. 232, 256-57 (2007) ("[I]t is the Secretary who knows the provisions of title 38 and can evaluate whether there is potential under the law to compensate an averred disability based on a sympathetic reading of the material in a pro se submission."). Accordingly, we conclude that the Board is not required sua sponte to raise and reject "all possible" theories of entitlement in order to render a valid opinion. The Board commits error only in failing to discuss a theory of entitlement that was raised either by the appellant or by the evidence of record. This standard is generous to veterans but respects the reality that the Secretary does not have the resources to investigate sua sponte every conceivable unsupported theory of entitlement. In this case, neither the appellant nor the record raised the theory of entitlement to service connection on a direct basis and, thus, the Board did not err in failing to discuss that theory.

**a. Service connection on a direct basis was not raised by the appellant to the Board**.

First, we consider whether direct service connection was argued below. To do so, we must consider how to read the appellant's submissions. In the Secretary's supplemental memorandum of law, filed in response to the Court's February 8, 2007, order, the Secretary acknowledges that as a matter of practice "VA reads all submissions sympathetically, even when a claimant is represented by counsel." Secretary's Supplemental Memorandum at 8. The Secretary goes on to assert that "in the six years [that Mr. Robinson's] appeal was pending before [VA], neither he nor his counsel presented any argument to support his claims." *Id*. at 9. The Secretary is correct. In neither his January 2000 nor his May 2001 Substantive Appeal did Mr. Robinson assert anything of real

substance.[1]  In fact, the argument section on the January 2000 Substantive Appeal form, signed by Mr. Robinson and attorney Cameron, was left blank.  R. at 152.  On that form, Mr. Robinson merely checked a box that indicated that he wanted to appeal all of the issues listed on the Statement of the Case and any Supplemental Statements of the Case that he had received.  *See id*.  The May 2001 Substantive Appeal form, again signed by Mr. Robinson and attorney Cameron, contains little more. The argument section of that appeal form contains only the following statement:  "I disagree with all of the conclusions in your office's Statement of the Case, dated April 18, 2001.  The [r]egional office failed to consider all of the evidence and failed to follow the correct legal standards in reaching its conclusions."  R.  at 174.

The presence of attorney Cameron throughout the appeals process before the Agency is a significant factor that solidifies our conclusion.  *See Andrews*, 421 F.3d at 1283 (holding that VA's obligation to sympathetically read a clear-and-unmistakable-error motion does not apply to pleadings filed by an attorney); *see also Overton v. Nicholson*,  20 Vet.App. 427, 438 (2006) ("A claimant's representation by counsel does not alleviate VA's obligation to provide compliant notice; however, that representation is a factor that must be considered when determining whether that appellant has been prejudiced . . . ."); *id.* at 438-39 ("[I]t is not unreasonable to conclude that an appellant's attorney is acting with the full authority and knowledge of his client and thus, to attribute to his client the attorney's actions and communications.").  We presume that attorney Cameron, an experienced attorney in veteran's law, says what he means and means what he says.  In this case, to the extent that attorney Cameron made arguments to VA, he specifically used the term "secondary service connection" and presented arguments consistent with the meaning of that term.  Where an attorney uses terms of art that make sense in the context used, the Board may reasonably conclude that there is no ambiguity to be resolved with a sympathetic reading or a liberal construction of the pleadings. In contrast, where a lay person uses a term of art, the Board should still read the whole submission critically rather than assuming that the language was used correctly.  *Ingram*, 21 Vet.App. at 256

---

[1]Although the law encourages, but does not compel, an appellant to provide substantive argument to the Board, *see supra* p. 7, an appellant's failure to do so clearly bears heavily on whether the Board failed to liberally construe the appellant's assertions, particularly where a veteran is represented by counsel.

("[A] sympathetic reading of the appellant's pleadings cannot be based on a standard that requires legal sophistication beyond that which can be expected of a lay claimant . . . .").

Ultimately, there was nothing in Mr. Robinson's appeal to the Board, prepared on his behalf by attorney Cameron, that the Board could have been expected to liberally construe or read sympathetically in order to determine that Mr. Robinson was seeking to have his claim adjudicated on a theory of direct service connection in addition to a theory of secondary service connection. Therefore, the Board did not err by failing to adjudicate his claim on the basis of direct service connection. The Statement of the Case to which Mr. Robinson himself referred in his May 2001 Substantive Appeal made it clear that the regional office had adjudicated and denied his heart and thyroid claims solely on a secondary-service-connection basis. *See* R. at 179-81. In his appeal to the Board, Mr. Robinson merely asserted that he disagreed with that specific conclusion. In that appeal, prepared on his behalf by attorney Cameron, Mr. Robinson did not address the issue on entitlement to service connection on a direct basis. Indeed, as noted above, it was in Mr. Robinson's brief to this Court that he first contended that he was seeking service connection on a direct basis. As a result, we find that no amount of liberal construction by the Board of Mr. Robinson's arguments on appeal could have led it to believe that Mr. Robinson was taking issue with VA's failure to adjudicate his claims on a direct theory as opposed to a secondary one. *See Schroeder*, 212 F.3d at 1271; *see also* 38 C.F.R. § 20.202.

**b. Service connection on a direct basis was not suggested by the record before the Board.**

Turning to whether the evidence of record before the Board raised the issue of service connection on a direct theory, we note that in his opening brief Mr. Robinson does not point to any evidence that he contends raised that theory or that should have compelled the Board to adjudicate his claim on a direct theory in addition to a secondary theory. We therefore have no basis for concluding that the Board erred in failing to address the claim in terms of a theory of direct service connection. *See Solomon*, 6 Vet.App. at 402. While Mr. Robinson belatedly tries to point to evidence in the record in his reply brief, the Court is not required to consider his belated argument in support of his belated theory. *See, e.g.*, *Burton v. Principi*, 15 Vet.App. 276, 277 (2001) (per curiam order) ("We should not encourage the kind of piecemeal litigation in which the appellant here has engaged."); *Tubianosa v. Derwinski*, 3 Vet. App. 181, 184 (1992) (noting that the appellant

12

"should have developed and presented all of his arguments in his initial pleading"); *Fugere v. Derwinski*, 1 Vet. App. 103, 105 (1990) ("[a]dvancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court" because piecemeal litigation hinders the decisionmaking process).

Our dissenting colleague indicates that she would find the evidence first mentioned in Mr. Robinson's reply brief sufficient to demonstrate prejudicial error by the Board. We disagree. There is simply no medical or lay evidence of continuity of symptomatology that links the symptoms reported in 1988 to Mr. Robinson's current condition in a way that suggests that direct service connection. It is impractical to require the Board to explicitly mention every prior medical record noting any type of symptom and state that there is no evidence that the symptom is directly connected to the current condition. Such a remand would "'unnecessarily impos[e] additional burdens on the [Board] and . . . VA with no benefit flowing to the veteran.'" *Sabonis v. Brown*, 6 Vet.App. 426, 430 (1994) (quoting *Soyini v. Principi*, 1 Vet.App. 540, 546 (1991)). Under *Gonzales* and *Newhouse*, both *supra*, we must presume that the Board considered this evidence and found it too scant to warrant comment. That conclusion is not clearly erroneous so we must affirm.

For all the reasons stated above, based on the evidence contained in the record, as well as Mr. Robinson's statements throughout his appeal, the Court concludes that the Board did not erred in failing to adjudicate his claim for VA benefits for heart disease and a thyroid disability on a direct basis. *See Schroeder*, 212 F.3d at 1271.

### C. Compliance With the 2001 Board Remand Order

"[A] remand by this Court or the Board confers on the . . . claimant, as a matter of law, the right to compliance with the remand orders." *Stegall*, 11 Vet.App. at 271. When "the remand orders of the Board or this Court are not complied with, the Board itself errs in failing to [e]nsure compliance." *Id.* Such an error can constitute the basis for a remand by this Court. *Id.*

As an initial matter, Mr. Robinson did not raise his argument regarding VA's compliance with the Board's remand order of 2001 before the Board in 2004 when the matter was returned to the Board following its prior remand order. Nevertheless, rather than remanding the case for the Board to discuss that argument in the first instance, we will consider it ourselves. It is not surprising that Mr. Robinson's *Stegall* argument bears a striking resemblance to his argument that the Board erred

13

in failing to adjudicate service connection on a direct theory. He argues that the November 2002 VA examiner failed to comply with the Board's October 2001 remand order because the examiner addressed only secondary service connection and did not provide an opinion regarding the etiology of the heart and thyroid conditions. *See* Appellant's Br. at 8 ("Dr. Schroff improperly limited his reports only to the issue of whether the two conditions were caused by or related to the [a]ppellant's [peptic ulcer disease]."). Again, we are not persuaded.

The Board's remand order, read in its entirety, does not support Mr. Robinson's argument. The relevant paragraphs of the 2001 Board remand order state that the regional office "should arrange for a VA examination . . . in order to determine the nature, severity, and etiology" of Mr. Robinson's heart and thyroid disorders. R. at 189-90. Although such broad language arguably supports Mr. Robinson's argument, it cannot be read out of context. In that regard, later in the relevant paragraphs of the order, the Board made it abundantly clear that the examiner was requested to opine only as to whether the heart and thyroid conditions were "caused or . . . aggravated by the service[-]connected peptic ulcer disease," in other words, as to whether the heart and thyroid conditions are related to Mr. Robinson's service on a secondary basis. *Id*. The examiner did not "improperly" limit his opinion, as Mr. Robinson contends; he complied with the Board's directive regarding the medical examination and opinion required. Appellant's Br. at 8. In sum, the examiner answered the questions posed by the Board and did not err in failing to render an opinion on a subject other than that to which the Board directed him.

### D. Duty To Assist Argument

Mr. Robinson argues that the Secretary violated his duty to assist by relying on the inadequate November 2002 VA examination report. Because the Court has already concluded that that examination complied with the Board's October 2001 remand instructions, Mr. Robinson's duty-to-assist argument–a corollary of his previous argument–is unavailing.

### E. Remand Under *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000)

Despite the complete absence of error in the Board decision on review, the Court still has the power to remand this matter if some other factor renders remand appropriate. 38 U.S.C. § 7252(a). An example of such a factor is an intervening change in law. *See*, *e.g.*, *Vaughn v. Principi*, 336 F.3d 1351 (Fed. Cir. 2003). However, our power to find that a non-error remand is appropriate does not

14

mean that an appellant is entitled to such a remand whenever he or she wishes the Board to address an issue not originally discussed. In *Maggitt*, the Federal Circuit held that we have discretion to hear arguments presented to us in the first instance, provided that we otherwise possess jurisdiction over the claim. *See* 202 F.3d at 1377. Addressing whether we can invoke an exhaustion requirement against an appellant to promote judicial efficiency, the Federal Circuit stated that "the Veterans Court is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case." *Id*. at 1378.

Subsequent to *Maggitt*, the U.S. Supreme Court issued its decision in *Sims*, *supra*. At issue in *Sims* was whether a Social Security claimant seeking judicial review of an administrative law judge's decision waived court consideration of any issues that were not raised in her request for review by the Social Security Appeals Council. *See Sims*, 530 U.S. at 105. The Supreme Court observed that the laws and regulations governing the Social Security Administration do not require issue exhaustion and that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* at 109. Because "Social Security proceedings are inquisitorial rather than adversarial," the Supreme Court held that a court-imposed issue exhaustion requirement was inappropriate in the Social Security context. *Id*. at 110.

While the appellant asserts that *Sims* has narrowed–if not eliminated–the scope of *Maggitt*, the Court does not agree. The Court's authority and *Maggitt* were already narrower than *Sims*. Hence, *Sims* does not affect *Maggitt*. To be clear, the essence of *Sims* is that a Social Security claimant is not barred from arguing before a Federal district court, a judicial tribunal, a particular theory of error in the original ALJ decision simply because that error was not raised during the appeal to the Social Security Appeals Council, an administrative appellant tribunal. Even without *Sims*, the Court has long held that the Board itself commits error by failing to address issues reasonably raised by the record. *See Solomon*, *supra*. Hence, consistent with *Sims*, the Court does not require that an issue be argued to the Board, an administrative appellate tribunal, in order for it to be raised before the Court, a judicial tribunal. In other words, *Sims* holds that an allegation of error can be raised at any level in a nonadversarial setting. However, *Sims* does not allow an

unsupported theory of entitlement to be raised at any time so as to entitle an appellant to a remand not based on error.

This case differs from *Sims* because here the question of whether to exercise discretion to remand under *Maggitt* deals only with a situation where the remand would *not* be based upon error. Nothing in *Sims* requires remand in the absence of error, even in a nonadversarial setting. Hence, the question presented is whether it is appropriate to remand this matter in the absence of error and based on Mr. Robinson's new theory of direct service connection. As there has been no reason to excuse the failure to present this theory during the last seven years, the Court concludes that a remand under *Maggitt* would be inappropriate. We recently reaffirmed in *Bonhomme v. Nicholson*, 21 Vet.App. 40, 44 (2007), that it is not the role of the Court to act as "a mere procedural reset button where any appellant could obtain unlimited remands simply by submitting some new document to VA." In *Bonhomme*, the Court denied the appellant's motion for a remand to consider newly produced evidence that had been submitted to VA. The logic of *Bonhomme* is only stronger in the situation where the appellant's request for a discretionary, non-error remand is not even supported by new evidence. Indeed, Mr. Robinson's request for a remand is not only not supported by new evidence, but it is also not supported by any evidence previously of record.

To summarize, Mr. Robinson has neither demonstrated error in the Board decision nor offered a reason why counsel could not have argued the theory of direct service connection during the seven years this matter has been before VA. In particular, he has offered no reason why this theory could not have been included in the Substantive Appeals that otherwise contained no arguments. Nonetheless, counsel is before this Court with a new theory and seeking the advantage of having the Court return his claim to the head of the line so that his failure to raise this theory earlier will have no consequence. *See* 38 U.S.C. § 5109B, 7112 (West Supp. 2006) (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court). In the absence of error or a justification for not raising the issue earlier, it is simply not fair to accord Mr. Robinson special treatment or to make other claimants wait for decisions while he receives expedited treatment from VA. He remains free to raise this theory in attempt to reopen his claim for service connection.

### III. CONCLUSION

On consideration of the foregoing, the May 17, 2004, Board decision is AFFIRMED.

SCHOELEN: *Judge*, dissenting: I respectfully dissent from the majority's interpretation and application of the United States Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Schroeder v. West*, 212 F.3d. 1265 (Fed. Cir. 2000), and from the majority's application of *Sims v. Apfel*, 530 U.S. 103 (2000), and *Maggitt v. West*, 202 F.3d 1370 (Fed. Cir. 2000) in this case.

The appellant argues that "[t]he Board and Secretary failed to address Mr. Robinson's two claims on a direct service connection basis to adjudicate whether his thyroid condition and/or his heart condition were caused in part by his military duties in service." Appellant's Brief (Br.) at 11-12. He contends that this failure is a violation of the Federal Circuit's holding in *Schroeder*, which he contends requires VA to assist the claimant by investigating "*all* possible in-service causes of that current disability, including those unknown to the veteran." Appellant's Br. at 12 (quoting *Schroeder*, 212 F.3d at 1271 (emphasis in original, omitted in Br.)). The majority concludes that *Schroeder*, because it dealt with a Board denial based on both a direct theory of service connection and a presumptive theory of service connection, addresses only the consequences of the Board denying benefits on multiple bases previously raised by the appellant, and is not applicable because this case has involved only the denial of benefits on one basis – secondary service connection. *Ante* p. 8.

Although *Schroeder* undeniably arose in the context of the Board denying benefits on multiple bases that were previously raised by the appellant, I see no reason to limit what is, in my view, its essential holding, as the majority does. The Federal Circuit did not qualify VA's obligation to assist a claimant, nor does the *Schroeder* holding turn on the procedural posture of the case. I believe the breadth of the Federal Circuit's language also undermines the majority's assertion that "*Schroeder* does not address whether VA has an obligation to explicitly discuss sua sponte a particular theory in the first place." *Ante* p. 8. If VA's obligation to investigate causes of a disability includes those causes that are "unknown" to the claimant, these causes would not and could not have been previously raised by the appellant. VA would necessarily have the obligation to consider those causes sua sponte. In fact, sua sponte consideration of claims and theories is exactly what is required of VA as a result of VA's duty to investigate all possible in-service causes of a condition as well as

17

VA's duty to read pro se pleadings – such as the appellant's initial application for benefits – sympathetically. *See Andrews v. Nicholson*, 421 F.3d 1278, 1282 (Fed. Cir. 2005) ("*Roberson* [*v. Principi*, 251 F.3d 1378 (Fed. Cir. 2001)] requires, with respect to all pro se pleadings, that the VA give a sympathetic reading to the veteran's filings." (quoting *Szemraj v. Principi*, 357 F.3d 1370, 1373 (Fed. Cir. 2004) and citing *Moody v. Principi*, 360 F.3d 1306, 1310 (Fed. Cir. 2004))); *see also* R. at 122-25.

To be clear, VA's duty to assist a claimant by investigating all possible in-service causes of a current disability is not absolutely limitless–it is an inquiry into what is *possible*. VA must consider factors such as the circumstances of service, the type of disability for which the claimant seeks benefits, and any evidence of record. Regulatory provisions already suggest circumstances in which VA is not obligated to provide assistance, for example, where the claimant is ineligible for the benefit sought because of "lack of qualifying service, lack of veteran status, or other lack of legal eligibility;" if the claim is "inherently incredible or clearly lack[s] merit;" or if the application requests a "benefit to which the claimant is not entitled as a matter of law." 38 C.F.R. § 3.159(d)(1-3) (2007). There is no argument that Mr. Robinson's application is not substantially complete, or that he lacks qualifying service, veteran status, or legal eligibility, or that his claim is inherently incredible, or that he is not entitled to benefits as a matter of law.

VA's duty to assist the claimant is the cornerstone of the nonadversarial claims adjudication system the Agency is meant to operate. The Federal Circuit has explained the current nature of the duty to assist, contrasting it with its former incarnation:

> On November 9, 2000, Congress enacted the VCAA [Veterans Claims Assistance Act], Pub.L. No. 106-475, 114 Stat. 2096 (codified in scattered sections of 38 U.S.C.), which "amend[ed] title 38, United States Code, to reaffirm and clarify the duty for the Secretary of Veterans Affairs to assist claimants for benefits under laws administered by the Secretary, and for other purposes." Among other things, the VCAA removed the requirement of former § 5107(a) that a claimant first establish a well-grounded claim before VA was to begin providing assistance. Further, it amended existing §§ 5102 and 5103 and added new §§ 5100 and 5103A, expanding VA's duty to assist claimants in several respects. Specifically, new § 5103A(a) imposes on VA a duty to assist a claimant by making reasonable efforts to assist him or her in obtaining evidence necessary to

18

substantiate a claim for benefits. 38 U.S.C. § 5103A(a). Further provisions outline the details of providing such assistance in obtaining information, evidence, and records from government and private sources; informing the claimant if VA is unable to obtain pertinent evidence; and providing a medical examination or medical opinion when necessary to resolve the claim.

*Paralyzed Veterans of Am. v. Sec'y of Veterans Affairs*, 345 F.3d 1334, 1338-39 (Fed. Cir. 2003).

The critical change in VA's duty to assist wrought by the VCAA regards *when* the duty is triggered. The duty to assist is now triggered by VA's receipt of a "substantially complete application for benefits," 38 C.F.R. § 3.159(c) (2007), which means, for a case such as Mr. Robinson's, an application "containing the claimant's name . . . sufficient service information for VA to verify the claimed service, if applicable; [and] the benefit claimed and any medical condition(s) on which it is based." 38 C.F.R. § 3.159(a)(3) (2007).

In October 2001, the Board remanded Mr. Robinson's claim "for compliance with the notice and duty to assist provisions contained in the [VCAA]." R. at 187. I cannot say why VA never considered the possibility of direct service connection in this case because it cannot be ascertained from the record why VA elected only to consider the claim on a secondary basis. The Board decision here on appeal provides very little guidance. After listing the various statutory and regulatory provisions governing the direct theory of service connection (R. at 8), the Board went on only to evaluate the case as a claim for benefits on a secondary basis, having concluded that "the veteran contends that [his current conditions] were caused or aggravated by service-connected peptic ulcer disease, rather than due directly to any incident of active service." R. at 8. The Board did not provide a sufficient explanation of the reasons or bases for concluding that the appellant's arguments were competent to limit VA's development and adjudication of the case. *See* 38 U.S.C. § 7104(d)(1) (requiring the Board, in rendering its decision, to provide a written statement of the reasons or bases for its "findings and conclusions[] on all material issues of fact and law presented on the record"; *see also Espiritu v. Derwinski*, 2 Vet.App. 492, 494-95 (1992) (indicating that evidence regarding medical diagnoses provided by a person without "medical knowledge" is not probative); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990) (holding that the Board's statement of reasons or bases must

be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court).

Moreover, I disagree with the majority's statement that the record is devoid of evidence relevant to the matter of direct service connection. *See ante* pp. 11-12. In his reply brief, responding to the Secretary's argument that there is no evidence that he suffered an event, injury or disease in service related to his claimed disabilities (Secretary's Br. at 14), he cites recurrent chest pain experienced during active duty (Reply Br. at 7 (citing R. at 36)), and notes that an August 1988 examination report "recorded that Mr. Robinson was having 'irregular chest pains' and was 'see[ing] black dots in front of eyes (both eyes).'" Reply Br. at 7 (citing R. at 111). Pursuant to 38 U.S.C. § 7104(a), "[d]ecisions of the Board shall be based upon the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation." As discussed above, there was evidence of record that could have implicated a direct theory of service connection, but the Board did not consider that theory of entitlement. In failing to do so, it violated section 7104(a)'s mandate by failing to base its decision on "applicable provisions of law and regulation." Section 7104(a) is operative regardless of what the appellant argues or when he argues it; it is indisputably the Board's obligation to consider all applicable provisions of law and regulation, not the appellant's obligation to tell the Board which provisions apply.

Additionally, and again pursuant to my view of *Schroeder*, presuming that VA has the obligation to investigate all possible in-service causes of a current disability, if it were possible that a claimant, by affirmative instruction to the Agency, could waive consideration of such development, I would not find that the appellant here has done so. *See Janssen v. Principi*, 15 Vet.App. 370, 374 (2001) (holding that, in order expressly to waive consideration of a legal provision, "the appellant must first possess a right, he must have knowledge of that right, and he must intend, voluntarily and freely to relinquish or surrender that right"). I do not believe that the appellant's failure to raise a point affirmatively during proceedings below constitutes express voluntary relinquishment of consideration of that point.

I would find that remand is warranted in this case based on VA's failure to comply with *Schroeder*, the Board's failure to consider all applicable provisions of law, and the Board's failure

20

to provide an adequate statement of reasons or bases for its conclusion that VA properly assisted Mr. Robinson in developing his claim.

The majority also discusses the relationship between *Maggit v. West*, 202 F.3d 1370 (Fed. Cir. 2000) and *Sims*, and concludes that "*Sims* does not affect *Maggitt*." *Ante* p. 14. For the reasons set forth below, I disagree with this conclusion.

In *Maggitt*, the Federal Circuit held that this Court has discretion to hear arguments presented to it in the first instance, provided that the Court otherwise possesses jurisdiction over the claim. *See* 202 F.3d at 1377. Addressing whether the Court could invoke an exhaustion requirement against an appellant to promote judicial efficiency, the Federal Circuit stated that "the Veterans Court is uniquely positioned to balance and decide the considerations regarding exhaustion in a particular case." *Id*. at 1378. As explained below, however, in light of the Supreme Court's subsequent decision in *Sims*, I conclude that a "judicially imposed issue-exhaustion requirement" has no place in the veterans benefits system, but I believe the majority imposes one de facto in its disposition of this case. 430 U.S. at 110.

At issue in *Sims* was whether a Social Security claimant seeking judicial review of an administrative law judge's decision waived court consideration of any issues that were not raised in her request for review by the Social Security Appeals Council. *See id.* at 105. The Supreme Court observed that the laws and regulations governing the Social Security Administration do not require issue exhaustion and that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Sims*, 530 U.S. at 109. Because "Social Security proceedings are inquisitorial rather than adversarial," the Supreme Court held that a court-imposed issue exhaustion requirement was inappropriate in the Social Security context. *Id*. at 110.

The laws and regulations governing veterans' benefits do not require issue exhaustion. Although the Secretary asserts that 38 U.S.C. § 7105(d)(3) and 38 C.F.R. § 20.202 (2007) impose such a requirement, I disagree. First, the statute and regulation both use the permissive word "should" to encourage, but not require, the claimant to raise particular issues for review. *See* 38 U.S.C. § 7105(d)(3) ("The appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case."); 38 C.F.R. § 20.202 ("The

21

Substantive Appeal should set out specific arguments relating to errors of fact or law made by the agency of original jurisdiction in reaching the determination . . . being appealed . . . . The Board will construe such arguments in a liberal manner for purposes of determining whether they raise such issues on appeal."). The use of nonmandatory phrasing means that the statute and regulation do not impose an issue exhaustion requirement. *See Douglas v. Derwinski*, 2 Vet.App. 435, 439 (1992) ("Nowhere does the regulation state that only the issues raise in the Form 1-9 must be considered; nor does the regulation state that the B[oard] must consider only the evidence pertinent to the issues raised explicitly in the Form 1-9."). Second, like the Social Security adjudication scheme, the veterans benefits adjudication process is nonadversarial in nature. *See Andrews*, 421 F.3d at 1283 ("[P]roceedings before the Board, like those before the Social Security Appeals Council, are non[]adversarial."); *see also Thurber v. Brown*, 5 Vet.App. 119, 124 (1993) ("VA's nonadversarial claims system is predicated upon a structure which provides for notice and an opportunity to be heard at virtually every step in the process."). Thus, I would conclude, in accord with the Supreme Court holding in the nonadversarial Social Security setting, that the imposition of an issue exhaustion requirement in the adjudication of veterans benefits claims is undesirable.[1]

Although the majority states that "the Court does not require that an issue be argued to the Board in order for it to be raised here," *ante* p. 14, the majority goes on to state that "*Sims* does [not] allow an unsupported theory of entitlement to be raised at any time so as to entitle an appellant to a remand not based on error." *Id.* As a result, the majority finds no reason to remand this case for the Board to conduct any further development or adjudication of the appellant's claim, which, in fact, imposes the issue exhaustion requirement that *Sims* prohibits. With the understanding that *Sims* precludes such a result regardless of the appellant's failure to raise this argument below, I believe that the Court should exercise its discretion to remand this matter to the Agency for proper adjudication of the direct service connection theory in the first instance. *See Maggitt*, 202 F.3d at 1378-79

---

[1] Although I would not impose a judicial issue exhaustion requirement, I note that the Federal Circuit has recognized that regulations impose a limited issue exhaustion requirement in the context of motions to revise based upon clear and unmistakable error. In *Andrews*, the Federal Circuit actually discussed *Sims* and distinguished it on the basis that 38 C.F.R. § 20.1404(b) imposes a "regulatory requirement for exhaustion." *Andrews*, 421 F.3d at 1284. Importantly, however, the Federal Circuit has established that "VA has an antecedent duty to sympathetically read a [clear-and-unmistakable-error] motion that is filed pro se before determining whether a claim has been pled with specificity." *Johnston v. Nicholson*, 421 F.3d 1285, 1287 (Fed. Cir. 2005).

(allowing this Court to hear an argument raised before it in the first instance, assuming the Court has jurisdiction over the claim, or remand the matter to the Board for adjudication in the first instance); *see also Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000) (stating that "appellate tribunals are not appropriate fora for initial fact finding"); *Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996) (stating that this Court "is not a trier of fact and is not in a position to make . . . factual determination[s]"); *see also* 38 U.S.C. § 7261(c). I also note that it should not matter what Mr. Robinson wrote on his Substantive Appeal, as both the statute and regulation governing the content of a Substantive Appeal use only hortatory language in telling claimants what to include.

The majority relies, in part, on *Bonhomme v. Nicholson*, 21 Vet.App. 40 (2007) (per curiam order), to bolster its conclusion that a "discretionary, non-error remand," *ante* p. 15, is unwarranted in this case. *Bonhomme* addresses an application to reopen a previously and finally denied claim. The process for reopening a claim involves the submission of new and material evidence. In *Bonhomme*, after the Board rendered an adverse decision on the appellant's application and while appeal of that Board decision was pending at the Court, the appellant obtained additional evidence. *Bonhomme*, 21 Vet.App. at 41. The appellant urged the Court to vacate the Board decision and remand the matter on appeal based on the *newly obtained* evidence, not based on any flaw in the Board's decision on the evidence before it at that time. *Id*. As the Court explained, the Court's review of a given Agency decision "is limited to reviewing the correctness of the Agency's factual and legal conclusions based on the record before the [A]gency *at the time of its decision*." *Id.* at 43. The *Bonhomme* Court noted that granting the appellant's motion for remand "would not be in keeping with our role as an appellate court," *id*., because it would require the Court to engage in factfinding in the first instance or would cause the Court to operate as "a mere procedural reset button where any appellant could obtain unlimited remands simply by submitting some new document to VA, which the Court would have to assume is relevant." *Id.* at 44.

There are several reasons not to rely on *Bonhomme* as the majority does. First, because it involves an application to reopen a claim, *Bonhomme* addresses only the question of what the Court may do when additional evidence is submitted after the Board denies an application to reopen, whereas in the instant case, the dispute is about the Agency's treatment of the claim based on the evidence of record. The majority's assertion that "[t]he logic of *Bonhomme* is only stronger in the

23

situation where the appellant's request for a . . . remand is not even supported by new evidence," *ante* p. 15, is fallacious; if the appellant were to offer new evidence in the instant case, the Court could not consider it in the first instance. Accordingly, remand is not less appropriate here because Mr. Robinson did not submit new evidence; it is more appropriate because he has asserted an error – or at least incompleteness – in VA's review of the evidence of record. Second, *Bonhomme* explains what the submission of additional evidence in the application to reopen context does allow: "An appellant may submit new evidence to the Secretary while a claim is on appeal to this Court, but such evidence would constitute a new claim to reopen and would not entitle the appellant to an effective date based upon the date that the claim on appeal was received." *Bonhomme*, 21 Vet.App. at 42 (citing *Jackson v. Nicholson*, 449 F.3d 1204, 1208 (Fed. Cir. 2006)). Thus, the proper course of action in *Bonhomme* was clear, and there was no cause for the Court to consider remanding the case based on the submission of new evidence. Finally, *Bonhomme* clearly states that "[t]he issue before the Court is whether the submission of evidence proffered after a final Board decision provides sufficient justification to nullify the finality of that decision. We hold *under the facts of this case* that it does not." *Bonhomme*, 21 Vet.App. at 41 (emphasis added). The emphasized language suggests that the Court in *Bonhomme* viewed its holding as one limited in applicability to the facts before it and I believe the Court would do well to heed that limitation in this case.

The effect of the majority's reading of Mr. Robinson's pleadings to the Court is that Mr. Robinson, notwithstanding his argument to the Court that the Board should have considered his claims on a direct basis and highlighting some evidence that was before the Board that may suggest the plausibility of his claims on that basis, ends up with an affirmed – and thus final – Board decision on his claim. This occurs even though the Board *at no point* addressed the possibility that he might prevail on his claim on *any* theory of entitlement other than secondary service connection. In order to challenge this determination, Mr. Robinson will have to present new and material evidence to reopen his claim, in which case – should he prevail – he will receive a much later effective date for his award. *See Kent v. Nicholson*, 20 Vet.App. 1, 5 (2006); *see also* 38 U.S.C. §§ 5108, 7104(b)(1). It is doubtful that Mr. Robinson could prevail on a motion for revision on the basis of clear and unmistakable error (CUE), because not only is he without the benefit of *any* evidentiary development of the direct-service-connection theory, but this Court's adjudication of a matter generally amounts

24

to a final decision that cannot be reviewed by a lower adjudicatory forum. *See* 38 C.F.R. § 20.1400(b)(2) (2007) ("All final Board decisions are subject to revision under this subpart except: . . . . Decisions on issues which have subsequently been decided by a court of competent jurisdiction."); *see also Disabled Am. Veterans v. Gober*, 234 F.3d 682, 693 (Fed. Cir. 2000) (upholding regulation because "it is improper for a lower tribunal . . . to review the decision of a higher tribunal").

I am alarmed by the majority's decision, in concluding that this case need not be remanded for a Board decision in the first instance and in rejecting the appellant's argument made to the Court, to accord such significance to the fact that the appellant was represented by an attorney during the appeal process. To be clear, I do not wish to condone or endorse actions by attorneys that may hamper their clients' efforts to secure benefits, nor actions that hinder proper function of VA's adjudicatory system. Nevertheless, neither the Secretary nor the majority cites any statutory or regulatory authority for the conclusion that represented appellants should be treated differently from their unrepresented counterparts in VA's development of evidence. There is simply no basis in law to justify narrowing VA's duty to assist with the development of claims, based on the majority's artificial distinction between represented and unrepresented claimants. Absent congressional action to limit VA's duty to assist in claims by represented veterans, I believe the Court acts today to impede "Congress's clear desire to create a framework conducive to efficient claim adjudication" *Sanders v. Nicholson*, 487 F.3d 881, 889 (Fed. Cir. 2007).

The Court's decision results in a perverse incentive for claimants to elect not to engage attorneys to represent them before the Agency, despite recent legislation permitting claimants to hire attorneys much earlier in the claims process than previously allowed. *See* The Veterans Benefits, Health Care, and Information Technology Act of 2006, Pub. L. No. 109-461, § 101, 120 Stat. 3403 (2006). Mr. Robinson, as a result of the majority's decision in his case, received less favorable treatment from this Court than he would have received had he represented himself before the Agency. This result presents a peculiar conundrum for any claimant seeking benefits in a purportedly nonadversarial, manifestly pro-claimant adjudicatory system. *See Summers v. Gober*, 225 F.3d 1293 (Fed. Cir. 2000).

25

To summarize, I would hold that VA failed to fulfill its duty to assist as outlined in *Schroeder* and the Court should remand this case for correction of this error. Alternatively, I believe this Court should, in its discretion and pursuant to *Maggitt*, remand the case for VA to consider the direct theory of service connection in the first instance.