Citation Nr: 1607945 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-46 603 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Indianapolis, Indiana


THE ISSUES

1. Entitlement to service connection for a left shoulder disability, to include as secondary to his service-connected hallux rigidus with severe osteoarthritis of the right first metatarsal phalangeal joint.

2. Entitlement to a compensable rating for headaches.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. J. Houbeck, Counsel



INTRODUCTION

The Veteran had active service from May 1961 to May 1965.

This case comes before the Board of Veterans' Appeals (Board) on appeal from October 2007 and February 2010 rating decisions by the Department of Veterans Affairs (VA) Regional Offices (ROs) in St. Petersburg, Florida and Indianapolis, Indiana, respectively.

In December 2011, the Veteran testified at a personal hearing before a decision review officer (DRO) at the RO. A transcript of that hearing has been associated with the electronic claims file.

The above issues were remanded for additional development in January 2013 and August 2013. The claims again are before the Board.

This appeal was processed using the Veteran's Benefits Management System (VBMS) and Virtual VA paperless claims processing systems. Accordingly, any future consideration of the Veteran's case should take into consideration the existence of these electronic records.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. A left shoulder disability is not related to the Veteran's military service or service-connected disabilities.

2. The Veteran's headaches are manifested by symptoms comparable to more than one prostrating non-migraine headache per month, but without very frequent prostrating and prolonged attacks productive of severe economic inadaptability. 


CONCLUSIONS OF LAW

1. Service connection for a left shoulder disability is not warranted. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309, 3.310 (2015).

2. The criteria for an increased rating of 30 percent, but no higher, for the entire appellate time period for headache disorder have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1-4 .7, 4.124a, Diagnostic Code (DC) 8100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has thoroughly reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, all the evidence submitted by or on behalf of the Veteran. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the Veteran).

Veterans Claims Assistance Act of 2000 (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

VCAA letters dated in June 2007 and October 2009 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015). The Veteran was advised that it was ultimately his responsibility to give VA any evidence and information pertaining to the claims. He was also advised of the information and evidence that VA would attempt to obtain on his behalf. The letters informed him that additional information or evidence was needed to support his claims, and asked him to send the information or evidence to VA. The letters also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records and VA treatment records are in the file. Workers' compensation records have been associated with the claims file. Private treatment records have been associated with the claims file, to the extent possible. The Veteran has at no time referenced any other outstanding records that he wanted VA to obtain.

In service connection claims, the duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was provided a VA examination in October 2013, as the Board had previously concluded that previous medical opinion had been inadequate for adjudication purposes. The examiner provided a fully articulated and reasoned conclusion. This conclusion was based on review of the claims file, interview of the Veteran, and physical examination. The Board, therefore, finds the examination report to be thorough, complete, and sufficient upon which to base a decision with respect to the claim for service connection. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate).

In reaching that conclusion, the Board has considered the January 2016 statement of the Veteran's representative in which it was contended that the October 2013 VA examination report was inadequate because it failed to consider the "kinds and types of activities in which [the Veteran] was made to engage while first in basic training" and that the examiner also failed to "determine if the shoulder was a preexisting condition that was aggravated by the veteran's service to his prejudice, or was aggravated by his service connected disabilities albeit, warranting service connection in the absence of more from VA to refute the arguments." The Board, however, finds no competent evidence to suggest that a left shoulder disability preexisted service or was incurred in service. As will be discussed in greater detail below, the Veteran has consistently contended that his left shoulder disability is the result of multiple post-service falls due to his service-connected right great toe disability. There is no lay or medical evidence to suggest in-service or pre-service incurrence of a left shoulder disability. As to aggravation of the left shoulder disability by the right great toe disability, there is no lay or medical evidence of aggravation of the left shoulder by the right great toe. There is evidence of an altered gait, but nothing to suggest that the altered gait or other structural changes due to the right great toe problems aggravated the left shoulder. Instead and as noted, the basis of the claim has consistently been that the right great toe disability caused the Veteran to fall, resulting in a left shoulder injury. The October 2013 VA examination report fully discusses this contention and provides an adequate rationale for the conclusion expressed. As such, the Board concludes that a remand is not required to obtain an opinion on such a theory. See Robinson v. Peake, 21 Vet. App. 545, 550-51 (2008) (holding that the Board is not obligated to investigate all possible theories of entitlement, but rather, only as to those theories for which the evidence is sufficient to reach the low threshold necessary to trigger the duty to assist as contemplated by McLendon v. Nicholson, 20 Vet. App. 79, 81-86 (2006))

In increased rating claims, the duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the appellant. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2015).

The RO provided the Veteran multiple appropriate VA examinations, most recently in October 2013. The VA examination reports are thorough and supported by the other evidence of record (other than the March 2013 examination, which the Board found inadequate in its August 2013 remand). The examination reports discussed the clinical findings and the Veteran's reported history as necessary to rate the disabilities under the applicable rating criteria. The examination reports also discussed the impact of the disabilities on the Veteran's daily living. Based on the examinations and the fact there is no rule as to how current an examination must be, the Board concludes the examination reports in this case are adequate upon which to base a decision. See Barr, 21 Vet. App. at 312.

In reaching that conclusion, the Board acknowledges the arguments of the Veteran's representative, expressed in a January 2016 statement, indicating that the October 2013 VA examiner failed to consider the Veteran's reports of flare-ups that had been present during the entire appellate time period. As will be discussed in greater detail below, the examiner did find evidence of incapacitating non-migraine headaches more often than once per month. The findings are consistent with the Veteran's reports of flare-ups (as his regular headaches occur nearly daily) and the 30 percent rating assigned herein is an effort to fully compensate the Veteran for his contentions. As such, the Board concludes that a remand for a further examination for the headache claim is not required.

Based on the VA examination reports, the association of additional records, and the subsequent readjudication of the claims, the Board finds that there has been substantial compliance with its prior remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998). As discussed above, the Board finds the October 2013 VA left shoulder examination report with respect to the examiner's failure to specifically discuss aggravation to have substantially complied with the Board's remand instructions in light of the lay and medical evidence of record.

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).


Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in the line of duty in the active military, naval, or air service. 38 U.S.C.A. §§ 1110, 1131 (West 2014). That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b) (2015). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in service. 38 C.F.R. § 3.303(d).

For veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C.A. §§ 1101, 1112, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2015). In the instant case, there is no presumed service connection because the Veteran was not diagnosed with left shoulder arthritis in service or within one year of discharge.

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established for any disability which is proximately due to or the result of a service-connected disease or injury. See 38 C.F.R. § 3.310 (2015). Establishing service connection on a secondary basis requires evidence sufficient to show: (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id.; see also Allen v. Brown , 7 Vet. App. 439 (1995) (en banc).

The Veteran contends that his current left shoulder disability was caused or aggravated by his service-connected right big toe disability. Essentially, he asserts that his left shoulder problems stem from falls, primarily from a tractor, and that the falls were precipitated by his service-connected right big toe disability. 

The Veteran's service-treatment records do not include complaints, treatment, or diagnoses of a chronic left shoulder disability. As noted above, the Veteran does not contend that his left shoulder disability was the result of his military service.

Many years after service, in November 2007, the Veteran reported that if he turned his head to the side that he would become dizzy. In June 2008, the Veteran reported numbness and tingling in the bilateral lower extremities with any prolonged activity, including walking, sitting, or bending backwards. He had to look at his feet so that he did not trip. There was a history of falls and he used a cane outside the house. During a July 2008 VA general medical examination, the Veteran reported pain, weakness, fatigability, and numbness in the lower extremities, as well as a one-year history of dizziness. 

The Veteran initially sought treatment for his left shoulder in approximately October 2008. A February 2009 private treatment record indicated left shoulder problems of insidious onset, with no known cause, although the record did note a history of falls. In March 2009, the Veteran underwent surgery on the left shoulder. A March 2009 letter from a private physician concluded that it was at least as likely as not that the Veteran's left shoulder injury occurred during a fall. An undated letter, but presumably from June 2009, from the same private physician stated, "I would think it is at least as likely as not that the rotator cuff injury could have occurred during the fall related to the right ankle." A July 2009 letter from the same private physician indicated that the Veteran "had repeated falls and states that prior to falling, his shoulder was fine." The treatment provider concluded, "I believe it is at least as likely as not that the shoulder problems are related to fall, occurring secondary to right foot and ankle problems." The physician, however, did not provide any rationale for the expressed opinion.

During his December 2011 RO hearing, the Veteran reported first injuring his shoulder 7 or 8 years previously when he fell off a tractor and struck his left shoulder. Subsequently, he experienced multiple other falls on the left shoulder. 

A March 2013 VA medical opinion also is of record. As discussed in the August 2013 Board remand, the reviewer accurately noted that the Veteran's left shoulder problems stemmed from falls on ice and from a ladder (part of a piece of farming equipment). The reviewer, however, failed to acknowledge or discuss the Veteran's primary contention that the falls were precipitated by his service-connected right big toe disability. As such, the report findings are of very limited probative value to the Veteran's primary contentions. As to a relationship between a right big toe disability and a left shoulder disability in general, however, the opinion provided is of some value. Specifically, the opinion noted, "I am aware of no causal relationship between a shoulder condition and a foot condition. His shoulder injuries were caused by falls on the ice and a fall on a ladder when farming."

The Veteran was afforded a VA examination in October 2013. The examiner noted diagnoses of left acromioclavicular joint arthritis, left rotator cuff tear, and left bicipital tendonitis. The Veteran reported that he was getting out of a tractor and fell due to pain in his right great toe. He injured his left shoulder in the fall. Following examination, the examiner concluded that it was less likely than not that the left shoulder disabilities were incurred in or caused by the service-connected right great toe disability. The rationale was that there were several different conditions that could have contributed to the Veteran's 2008 fall from a tractor, as a result of which he injured his left shoulder. The most compelling condition was the Veteran's prior reported weakness in both lower extremities and tingling and numbness in both feet, which had been present for more than a year prior to the accident. These weakness and neurological problems in the lower extremities made him feel as though his legs were going to give out if standing or walking for too long. These problems were diagnosed as demyelinating neuropathy. The Veteran had experienced several serious falls due to those symptoms. The Veteran also reported problems with dizziness. The examiner acknowledged the Veteran's right toe pain, but concluded that it was more likely that the lower extremity neuropathy or the reported dizziness led to the 2008 fall.

Thus, the Veteran has a current left shoulder disability. The relevant questions, therefore, are whether that disability was incurred in or is otherwise related to the Veteran's military service or was caused or aggravated by his service-connected left great toe disability. For the reasons discussed below, the Board concludes that it was not.

As to consideration of the claim on a secondary basis, the Board finds the October 2013 VA examination report of significant probative value. The examiner's opinions were based on an interview of the Veteran, his reported medical history, and physical examination. Further, a complete and thorough rationale was provided for the opinions rendered. The examiner specifically concluded that the Veteran's 2008 fall was most likely due to his lower extremity neuropathy or reported dizziness, rather than his right great toe pain. In addition, the examiner noted that the medical evidence had attributed the Veteran's other falls to his nonservice-connected bilateral lower extremity demyelinating neuropathy, rather than this right great toe disability. Although the opinion did not discuss aggravation, given that the Veteran's contentions are that the right great toe problems were the causative factor of the falls, rather than an ongoing aggravating factor of the left shoulder disability, any failure to discuss aggravation in this case is not significant or relevant. There is no medical or lay evidence to suggest that the Veteran's right great toe disability aggravated his left shoulder disability. As such, the Board finds the above opinion wholly adequate to answer the relevant question as to etiology of the current left shoulder disability. See Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (a medical report must be read as a whole in the context of the claim and, even an opinion lacking in detail may be provided some probative value based upon the amount of information and analysis contained therein) (citing Acevedo v. Shinseki, 25 Vet. App. 286, 293-294 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners)). The Board finds this examination report findings to be the most probative evidence of record as to whether the Veteran's left shoulder disabilities were caused by his service-connected right great toe disability.

The Board has considered the March 2009, June 2009, and July 2009 letters from the Veteran's private physician. The first two letters are of little value because the March 2009 letter only indicated that the left shoulder injury was due to a fall and the June 2009 letter attributed the fall to the Veteran's right ankle, for which he is not service connected. As to the July 2009 letter, the physician did not provide any rationale for the opinion. As such, the Board finds the opinion of significantly less probative value than those expressed and explained by the October 2013 VA examiner.

The Board also has considered the Veteran's and his wife's contentions that his left shoulder disabilities were caused by his right great toe problems. In this regard, the Board acknowledges that the Veteran and other lay persons are competent to give evidence about what they experienced; for example, they are competent to discuss toe pain and other physically observed and experienced symptoms. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). In addition, the Board recognizes that lay persons are competent to provide opinions on some medical issues. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). Given the Veteran's and his wife's lack of demonstrated medical expertise and the complexity of linking the etiology of the left shoulder disabilities to right great toe pain (as opposed to the other factors discussed by the October 2013 VA examiner), however, the Board concludes that in this case their statements regarding any such link are significantly outweighed by the conclusions of the above VA examiner. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (explaining in footnote 4 that a veteran is competent to provide a diagnosis of a simple condition such as a broken leg, but not competent to provide evidence as to more complex medical questions). The reason for this is that the VA examiner has medical training, reviewed the history, conducted an examination, and provided a medical opinion supported by a rationale.

As to otherwise granting entitlement to service connection on a direct basis, the Board notes that there is no credible and competent lay or medical evidence linking the Veteran's left shoulder disabilities to onset in service or other relationship to service. The lay and medical evidence have universally attributed the left shoulder problems to the Veteran's multiple post-service falls that occurred decades after his separation from service. As such, service connection on a direct basis is not warranted. 

In conclusion, the VA examiner clearly reviewed the Veteran's medical history, interviewed the Veteran, and offered a detailed rationale for the opinions. The Board finds this the most probative evidence of record and ultimately outweighs the Veteran's and other lay representations as to the etiology of his left shoulder disorders. The July 2009 private physician's letter provided no rationale for the conclusions reached and it outweighed by the October 2013 VA medical opinion. There is no competent or credible evidence of record that any medical professional has linked the Veteran's current left shoulder disabilities directly to his military service or to his service-connected right great toe disability. 

The Board finds that the preponderance of the evidence is against the claim; therefore, the benefit-of-the-doubt rule does not apply. The claim for service connection must be denied. See 38 U.S.C.A. § 5107(b) (West 2014); see generally Ortiz v. Principi, 274 F.3d 1361 (Fed Cir. 2001).

Increased Rating

Disability evaluations are determined by the application of a schedule of ratings that is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014). Percentage evaluations are determined by comparing the manifestations of a particular disorder with the requirements contained in the VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2015). The percentage ratings contained in the Rating Schedule represent, as far as can practically be determined, the average impairment in earning capacity resulting from such disease or injury and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). VA has a duty to acknowledge and consider all regulations which are potentially applicable through the assertions and issues raised in the record, and to explain the reasons and bases for its conclusion. Schafrath, 1 Vet. App. at 589.

The degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58 (1994); Solomon v. Brown, 6 Vet. App. 396, 402 (1994). However, staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

If there is a question as to which evaluation to apply to the Veteran's disability, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2015). 

The evaluation of the same disability under various diagnoses, known as pyramiding, is generally to be avoided. 38 C.F.R. § 4.14 (2015). The critical element in permitting the assignment of several ratings under various DCs is that none of the symptomatology for any one of the disabilities is duplicative or overlapping with the symptomatology of the other disability. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

The Veteran's headache disability is rated as noncompensably disabling under DC 8100. He claims that the current rating does not accurately reflect the true nature and degree of his disability. 

DC 8100 provides ratings for migraine headaches. Migraine headaches with less frequent attacks than the criteria for a 10 percent rating are rated as noncompensably (0 percent) disabling. Migraine headaches with characteristic prostrating attacks averaging one in 2 months over the last several months are rated 10 percent disabling. Migraine headaches with characteristic prostrating attacks occurring on an average once a month over last several months are rated 30 percent disabling. Migraine headaches with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability are rated 50 percent disabling. 38 C.F.R. § 4.124a, DC 8100 (2015).

Following his claim for increased rating, the Veteran was afforded a VA examination in September 2007. At that time, the Veteran reported daily headaches that were dull and constant. Once a week the headaches would be severe and were described by the examiner as prostrating and relieved by resting in bed for 6 to 12 hours. The Veteran denied light or sound sensitivity during his severe attacks, but did have a floating feeling.

During his December 2011 RO hearing, the Veteran and his wife reported that ongoing, regular headaches and that some would be so severe that he would have to sit in his recliner and do nothing else. He also had been put on a special diet in the hopes of decreasing the headaches.

A January 2012 VA examination diagnosed chronic non-migraine headaches from 2003. The Veteran denied symptoms such as nausea, vomiting, light or sound sensitivity, or vision or sensory changes. The Veteran reported constant pain in his forehead, but the examiner found no evidence of prostrating attacks of headache pain. The examiner indicated that the Veteran's headaches would not impact his ability to work, as other-the-counter medication was helpful and none of the symptoms were incapacitating.

The Veteran was afforded a VA examination for his headaches in March 2013. As discussed in the Board's August 2013 remand, it did not consider the findings consistent with the evidence of record or adequate for rating purposes. As such, no further discussion of the findings will be made herein as they are not helpful to the Veteran's claim or consistent with the other evidence of record.

The Veteran was afforded a VA examination for his headaches in October 2013. The Veteran reported ongoing left-sided headache pain since 2004. The duration of the headaches was for less than one full day. The examiner indicated that the Veteran had prostrating non-migraine headache pain that occurred more frequently than once per month, but that he did not have very frequent prostrating and prolonged attacks of non-migraine headache pain. The Veteran's headache disorder did not impact his ability to work.

In light of this record, the Board concludes that the severity and frequency of the Veteran's headaches more closely approximate the criteria for a 30 percent rating under DC 8100, which contemplates prostrating attacks occurring on average once a month. 38 C.F.R. § 4.7. As noted above, the October 2013 VA examination report concluded that the Veteran experienced non-migraine incapacitating headaches more than once per month. The September 2007 VA examination report also noted prostrating attacks multiple times per month. The Board recognizes that some intervening medical records have indicated that the Veteran did not experience prostrating headaches; however, he and his wife have indicated that these symptoms have been occurring throughout the appellate time period. Thus, there is evidence of multiple prostrating headaches per month at both the beginning of the appellate time period and on the most recent examination. Given the foregoing and the lay reports of ongoing symptoms, the Board concludes that a 30 percent rating is warranted for the entire appellate time period.

A higher rating under DC 8100 is not warranted for any period on appeal because the evidence does not indicate that the Veteran experiences very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. As discussed above, the October 2013 VA examination report specifically found that the Veteran did not experience very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Similarly, the other medical and lay evidence of record does not suggest such a finding. The Veteran is in receipt of a total disability rating based on individual unemployability (TDIU) based on his service-connected disabilities; however, the TDIU rating was based solely on the Veteran's problems with his service-connected right foot and right shoulder disabilities. The Veteran's work functioning certainly would be affected by his headaches, but not to the point of economic inadaptability. The Board does not find such a scenario to represent very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability.

Moreover, no other DC is appropriately applied. The Board has considered alternative DCs relating to neurological conditions, but finds that they are inapplicable in this case. See 38 C.F.R. § 4.124a.

In summary, for the reasons and bases set forth above, the Board concludes that a 30 percent rating, but no more, is warranted for the Veteran's headaches for the entire period of this appeal. As explained in more detail above, the symptoms throughout the appeal period are essentially consistent. For this reason, staged ratings are not applicable. See Hart, 21 Vet. App. at 505. 

Additional Considerations

The Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2015). An exceptional case is said to include such factors as marked interference with employment or frequent periods of hospitalization as to render impracticable the application of the regular schedular standards. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluation for the service-connected headaches is inadequate. A comparison between the level of severity and symptomatology of the Veteran's headaches with the established criteria shows that the rating criteria reasonably describe the Veteran's disability level and symptomatology. As to the migraine headaches, they manifest primarily with symptoms of left-sided head pain and a floating feeling. The assigned 30 percent rating contemplates these and other potentially associated symptoms. Thus, the schedular rating under DC 8100 is adequate to fully compensate the Veteran for the disability on appeal. 

In addition to the foregoing, the Board notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). In this case, the Veteran is service-connected for multiple disabilities in addition to the headache claim on appeal. The Veteran has not alleged that his currently service-connected disabilities combine to result in additional disability or symptomatology that is not already contemplated by the rating criteria for each individual disability, and with the exception of the ratings currently on appeal, has not indicated dissatisfaction with his otherwise assigned rating.

Further, there is no medical evidence indicating that the disability on appeal combines or interacts with his other service-connected disabilities, either separately or together, in such a way as to result in further disabilities, functional impairment, or additional symptomatology not accounted for by the rating criteria applicable to each disability individually. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

In short, the rating criteria reasonably describe the Veteran's disability level and symptomatology. The Board, therefore, has determined that referral of this case for extraschedular consideration pursuant to 38 C.F.R. 3.321(b)(1) is not warranted.

Finally, the Board notes that in multiple statements the Veteran has asserted that his service-connected disabilities render him unemployable, thus raising a claim for a total disability evaluation based on individual unemployability (TDIU). However, the Board observes the TDIU claim was granted in a May 2012 rating decision, effective from June 1, 2007. The claims file does not indicate the Veteran has since expressed a desire to contest the effective date assigned therein as required pursuant to 38 C.F.R. § 20.1103. Therefore, the issue is not on appeal. See Rice v. Shinseki, 22 Vet. App. 447, 454 (2009) (noting in a footnote that claims for increased evaluations and TDIU claims may be separately adjudicated).


ORDER

Entitlement to service connection for a left shoulder disability is denied.

Entitlement to an increased rating of 30 percent for headaches is granted, subject to the laws and regulations controlling the award of monetary benefits.



____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs