Citation Nr: 1710391 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 09-04 069 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Whether new and material evidence has been presented to reopen a service connection claim for a psychiatric disorder, as secondary to service-connected plantar fasciitis. 

2. Entitlement to a compensable rating for service-connected fibrocystic breast disease. 

3. Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disabilities. 

4. Entitlement to compensation under 38 U.S.C.A. § 1151 for additional disability, claimed as resulting from surgery performed at a VA Medical Center (VAMC) on March 4, 2008 to treat service-connected plantar fasciitis of the left foot.



REPRESENTATION

The Veteran represented by: The American Legion


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Nicole L. Northcutt, Counsel


INTRODUCTION

The Veteran served on active duty from November 1988 to July 1991.

These matters come before the Board of Veterans' Appeals (Board) on appeal from rating decisions issued in November 2006, March 2009, and December 2011 by a Regional Office (RO) of the Department of Veterans Affairs (VA). 

In December 2008, the Veteran participated in an RO formal hearing, which included testimony regarding her claim seeking an increased rating for her service-connected fibrocystic breast disease. 

A January 2009 statement of the case (SOC) included issues pertaining to fibrocystic breast disease, and the feet and ankles. In perfecting the appeal by a VA From 9 later in January 2009, the Veteran limited her appeal the fibrocystic breast disease issue.

The Board recognizes that a claim seeking a TDIU has been implicitly raised by the record, and the Board has assumed jurisdiction of this claim as part and parcel of the increased rating claim on appeal, per Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). 

In January 2016, the Veteran testified regarding all of the issues on appeal during a Board hearing conducted via video-conference before the undersigned Veterans Law Judge. 

In June 2016, in accordance with 38 U.S.C.A. § 7109 and 38 C.F.R. § 20.901, the Board requested a medical expert opinion from an independent (non-VA) physician regarding whether the Veteran had incurred an additional disability as a result of the March 2008 VA surgery due to the fault of VA, and this opinion was rendered in September 2016. Thereafter, the Veteran and her representative were provided with a copy of the opinion and afforded the opportunity to submit additional evidence and argument, and the Veteran submitted a related response in October 2016.

Other additional evidence was received subsequent to the SOC issued in January 2014 for the section 1151 claim. As the evidence is not pertinent to this claim, a remand for RO consideration of the evidence is not necessary. See 38 C.F.R. § 20.1304(c).

Pursuant to 38 C.F.R. § 20.900(c), a reasonably raised motion to advance the Veteran's case on the Board's docket is granted based on her consistent reports of extreme financial hardship.

The decision below addresses the psychiatric disorder and the section 1151 claims. The remaining two issues are addressed in the remand following the decision.



FINDINGS OF FACT

1. A June 2006 rating decision denied the Veteran's initial service connection claims for various psychiatric disorders; the Veteran did not appeal the decision or submit any evidence related to the claims within one year of the issuance of the decision.

2. The evidence added to the record since the issuance of the June 2006 rating decision relates to elements of the psychiatric disorder service connection claim previously found to be absent and provides a basis for granting the claim.

3. The Veteran's currently-diagnosed persistent depressive disorder is due to her constant pain, which is caused in large part to her service-connected bilateral foot disabilities. 

4. The evidence of record fails to establish that the Veteran incurred an additional disability, not reasonably foreseeable or due to carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing surgical treatment on March 4, 2008. 


CONCLUSIONS OF LAW

1. The June 2006 rating decision denying the claims of entitlement to service connection for various psychiatric disorders is final. 38 U.S.C.A. § 7104 (West 2014); 38 C.F.R. § 20.1100 (2016). 

2. The criteria for reopening the service connection claim for a psychiatric disorder have been met. 38 U.S.C.A. § 5108 (West 2014); 38 C.F.R. § 3.156 (2016).

3. The criteria for service connection for a persistent depressive disorder, as secondary to service-connected bilateral plantar fasciitis, have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014), 38 C.F.R. §§ 3.102, 3.303, 3.310 (2016).

4. The criteria for compensation under 38 U.S.C.A. § 1151 for additional disability, claimed as resulting from surgery performed at a VAMC on March 4, 2008 to treat service-connected plantar fasciitis of the left foot, have not been met. 38 U.S.C.A. §§ 1151, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.361 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board has limited the discussion below to the relevant evidence required to support its findings of fact and conclusions of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

Claim to Reopen

The RO denied the Veteran's initial service connection claims for various psychiatric disorders, referred to as an anxiety disorder, major depressive disorder, schizoaffective disorder, and posttraumatic stress disorder, in June 2006, and the Veteran was apprised of her appellate rights in the notice accompanying this decision, but failed to initiate a timely appeal of this decision. Moreover, no evidence relevant to the denied claims was associated with the file within the year thereafter. Thus, the June 2006 decision became final. See 38 U.S.C.A. § 7105; 38 C.F.R. § 20.1100. 

Nevertheless, a final denial of a service connection claim may be reopened by the submission of new and material evidence. 38 U.S.C.A. § 5108; 38 C.F.R. § 3.156(a). New evidence is defined as evidence not previously submitted to agency decision-makers. Material evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. § 3.156(a).

In Shade v. Shinseki, 24 Vet. App. 110, 118 (2010), the United States Court of Appeals for Veterans Claims (Court) stated that when determining whether the submitted evidence meets the definition of new and material evidence, VA must consider whether the new evidence could, if the claim were reopened, reasonably result in substantiation of the claim. Id. at 118. Thus, pursuant to Shade, evidence is new if it has not been previously submitted to agency decision-makers and is material if, when considered with the evidence of record, it would at least trigger VA's duty to assist by providing a medical opinion, which might raise a reasonable possibility of substantiating the claim. Id. 

As reflected in the June 2006 rating decision, the RO denied the Veteran's service connection claims for various psychiatric disorders because the evidence then of record failed to suggest a link between any diagnosed psychiatric disorder and service. In that regard, while the Veteran had been diagnosed with several psychiatric disorders after service, there was insufficient evidence suggesting that these disorders began in or were otherwise related to service. Since the issuance of this June 2006 rating decision, evidence added to the record includes the Veteran's VA psychiatric treatment records, which reflect the Veteran's treatment for a depressive disorder secondary to her chronic pain stemming from her service-connected foot disabilities. Notably, the Veteran is service-connected for bilateral plantar fasciitis, currently evaluated as 50 percent disabling (the highest available schedular rating). 

Given that this newly-associated evidence provides a link between one of the Veteran's currently-diagnosed psychiatric disorders and service via a service-connected disability, this new evidence directly relates to the reason the Veteran's service connection claim was initially denied. Accordingly, the evidence is both new and material, sufficient to reopen the claim. The merits of the reopened claim are addressed below. 

Reopened Service Connection Claim

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. "To establish a right to compensation for a present disability, a veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Service connection may also be granted for a disability that is proximately due to, or aggravated by, service-connected disease or injury. See 38 C.F.R. § 3.310.

As discussed above, the Veteran currently experiences a psychiatric disorder that has been linked to the pain and limitation of function caused by her service-connected bilateral foot disorder. Notably, service connection for this foot disorder has been in effect since 1991, and the Veteran's earliest psychiatric treatment of record, reflected in an April 2004 psychiatric evaluation performed in conjunction with the Veteran's claim for disability benefits from the Social Security Administration (SSA), reflects diagnoses of depressive and pain disorders, with the Veteran reporting foot and leg pain and a related mobility impairment. Subsequent psychiatric treatment of record continues to reflect this relationship between the Veteran's pain, including her foot pain and related functional limitations, and her depression. Specifically, April 2012, December 2015, April 2016 VA psychiatric treatment records reference the Veteran's chronic pain, primarily her foot pain, as contributing to her current depressive disorder. Indeed, the diagnoses recorded by the Veteran's treating psychiatrist include a persistent depressive disorder with bilateral plantar fasciitis as the primary contributing factor. 

Given the foregoing, the Board concludes that the evidence of record establishes a sufficient relationship between the Veteran's service-connected bilateral foot disorder and her currently-diagnosed persistent depressive disorder to warrant the award of secondary service connection. This particularly so when reasonable doubt is resolved in the Veteran's favor. See 38 U.S.C.A. § 5107(b); 3.102. Thus, service connection for a persistent depressive disorder as secondary to service-connected bilateral plantar fasciitis is warranted. 

Entitlement to Compensation Pursuant to 38 U.S.C.A. § 1151

The Veteran contends that she developed an additional disability, manifested by left foot increased pain and numbness, as the result of the left foot plantar fascia release surgery performed at a VAMC on March 4, 2008. 

A Veteran may be awarded compensation for additional disability, not the result of his willful misconduct, if the disability was caused by hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by VA, and the proximate cause of the disability was (1) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or (2) an event not reasonably foreseeable. 38 U.S.C.A. § 1151. 

To determine whether additional disability exists within the meaning of § 1151, the Veteran's condition immediately prior to the beginning of the hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy (CWT) program upon which the claim is based is compared to his or her condition after such care, treatment, examination, services, or program has been completed. Each body part or system involved is considered separately. 38 C.F.R. § 3.361(b).

To establish causation, evidence must show that the hospital care, medical or surgical treatment, or examination resulted in the Veteran's additional disability or death. Merely showing that a Veteran received care, treatment, or examination, and that the Veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1).

Hospital care, medical or surgical treatment, or examination cannot cause the continuance or natural progress of a disease or injury for which the care, treatment, or examination was furnished unless VA's failure to timely diagnose and properly treat the disease or injury proximately caused the continuance or natural progress. 38 C.F.R. § 3.361(c)(2). Additional disability or death caused by a Veteran's failure to follow properly given medical instructions is not caused by hospital care, medical or surgical treatment, or examination. 38 C.F.R. § 3.361(c)(3).

The proximate cause of disability or death is the action or event that directly caused the disability or death, as distinguished from a remote contributing cause. 38 C.F.R. § 3.361(d). To establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination proximately caused a Veteran's additional disability or death, it must be shown that the hospital care, medical or surgical treatment, or examination caused the Veteran's additional disability or death (see 38 C.F.R. § 3.361(c)) and (i) that VA failed to exercise the degree of care that would be expected of a reasonable health care provider or (ii) that VA furnished the hospital care, medical or surgical treatment, or examination without the Veteran's or, in appropriate cases, the Veteran's representative's, informed consent). 38 C.F.R. § 3.361(d)(1).

The record reflects that the Veteran underwent surgery on March 4, 2008 to alleviate the symptoms of her service-connected plantar fasciitis affecting her left foot and that the surgery was performed at a VAMC by a VA physician. The surgical report reflects that there were no surgical complications and that the Veteran gave her informed consent prior to the surgery after being advised that her nonservice-connected fibromyalgia could complicate her post-surgical recovery. (Such an advisory is also reflected in a February 2008 VA pre-surgical consultation report.) Following surgery, the Veteran reported numbness and radiating pain, which she characterized as more severe than her pre-surgery symptoms, and she consistently reported this increased symptomatology during her post-operative treatment. In September 2008, the VA surgeon who performed the plantar fascia release referred the Veteran to a pain clinic for further treatment. 

In October 2008, the Veteran sought treatment from a private podiatrist, who prescribed conservative treatment for the Veteran's post-surgical left foot pain, including a steroid injection and a cam walker. Incidentally, a neurological examination of the Veteran's left foot performed at this time revealed normal results. Further, 2009 VA neurological treatment records indicate that the Veteran's symptoms were determined to have a musculoskeletal (not neurological) etiology with a neuropathic component, given the normal results of recent nerve conduction studies. 

The Veteran underwent a VA foot examination in April 2010, at which time a VA examiner diagnosed left lateral plantar nerve injury related to plantar fasciitis and metatarsalgia with bilateral foot and ankle pain; however, the examiner offered no opinion as to whether this injury was a result of fault on the part of VA or an event not reasonably foreseeable. In April 2011, the Veteran's private treating podiatrist, who stated he had not treated the Veteran for two years, opined that the Veteran's lack of tactile sensation along the plantar lateral aspect of her left foot indicated that one of the branches of her sural nerve may have been severed during surgery. A VA examiner, who reviewed the record in September 2011, concluded that that there was no evidence of fault on the part of VA during the March 2008 surgery and that the Veteran's current pain and numbness were known risks of her foot surgery. 

In December 2015, a VA examiner opined that the Veteran likely incurred increased left foot pain due to Reflex Sympathetic Dystrophy Syndrome (RSDS) or some other etiology during the March 2008 surgery. (The examiner noted that the clinical evidence of record failed to support a diagnosis of RSDS but that it was clear that the Veteran has experienced some post-surgical increased symptomatology.) The examiner further opined that this increased symptomatology/RSDS was not due to fault on the part of VA; that such increased symptomatology was an inherent risk in any surgical procedure (as outlined in the Veteran's informed consent); that this increased symptomatology/RSDS was not likely the result of an event that could have reasonably been foreseen and prevented by a reasonable healthcare provider; and that no failure on the part of VA to timely diagnose or treat the Veteran caused or resulted in her increased symptoms. 

During her January 2016 Board hearing, the Veteran testified that her private podiatrist informed her that her left foot current pain and numbness are due to nerve damage negligently incurred during her March 2008 VA surgery. Presumably, the Veteran's testimony refers to the 2011 statement of her private podiatrist. However, as this private opinion rendered in April 2011 used equivocal language, stating that the Veteran's post-surgical symptoms "may" be attributable to a sural nerve injury incurred during the 2008 surgery, and as this opinion did not include a supported conclusion that this injury was due to VA fault, this opinion is not legally adequate to support a grant of benefits. Similarly, the April 2010 VA examiner's diagnosis of a surgically-incurred plantar nerve injury did not include a conclusion that this injury was due to VA fault.

In order to satisfy VA's duty to assist and obtain a wholly sufficient medical opinion resolving the conflicting medical evidence of record, the Board requested that an independent medical expert (namely a subject matter expert from a non-VA medical facility, hereinafter referred to as an IME), specifically an orthopedist, review the Veteran's claims file and opine whether the Veteran did indeed incur an additional disability resulting from her March 2008 foot surgery that was the result of VA fault or an event not reasonably foreseeable. 

In a November 2016 medical opinion, the IME noted his review of the record, and opined that while the Veteran's reported post-surgical increased symptomatology indicated an increase in her subjective symptoms, this increased symptomatology could not be linked to any clinical pathology. In that regard, the IME noted that while the Veteran's private podiatrist opined in 2011 that the Veteran's sural nerve could have been severed during her 2008 surgery, accounting for her post-surgical increased symptomatology, no neurological deficits were observed by this same podiatrist in 2008 during the Veteran's first post-operative treatment. Thus, any current neural deficits could not be linked to the Veteran's surgery, as any nerve injury incurred during surgery would have manifested immediately. Further, the IME noted that the Veteran's nerve conduction studies and foot magnetic resonance imaging (MRI) report were inconsistent with a left foot nerve injury, thereby failing to support a clinical basis for her reported symptomatology. Furthermore, the IME found that the Veteran's subjective complaints were inconsistent with a left foot nerve injury and with anatomic principles in general. 

Moreover, while acknowledging that the Veteran did indeed incur a subjective additional disability as a result of her 2008 VA surgery (based on her consistent reports of increased symptomatology), the IME concluded that this subjective disability did not result from any fault on the part of VA, including when performing the surgery or providing post-operative care, as no such fault was evident upon review of the related treatment records. Further, the IME concluded that given the pre-surgery advisory that the Veteran's fibromyalgia could complicate her post-operative recovery (this advisory was also included in the Veteran's informed consent), the Veteran's additional subjective symptoms were post-operative complications that were indeed foreseeable, and thus encompassed by her consent. 

When analyzing the merits of this claim, the Board first acknowledges that the Veteran is competent to report her increased left foot symptomatology following her 2008 VA left foot surgery. Furthermore, the Board does not doubt the veracity or sincerity of the Veteran's reports and deems her to be a credible historian. Indeed, the IME concluded that the Veteran did incur an additional subjective disability during her 2008 VA foot surgery based on her competent, credible reports, the conclusion of which the Board finds to be persuasive.

However, in this case, a determination as to whether the Veteran's additional subjective disability resulted due to VA fault or due to an event not reasonably foreseeable is a complex medical determination requiring specific medical expertise. Thus, a medical opinion rendered by someone with such expertise is required to decide the claim, and as the Veteran has no known or reported medical expertise, her opinion as to causation cannot serve to substantiate her claim. Furthermore, the medical opinion rendered by someone with such expertise must also be legally sufficient in order to form the basis for the Board's decision. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008) (holding that to have probative value, the opinion provider must be fully informed of the pertinent factual premises, provide a fully articulated opinion, and provide a supportive reasoned analysis). 

As referenced above, the 2010 VA examiner's conclusion that the Veteran had a neurological injury resulting from her 2008 surgery and the 2011 statement by the Veteran's private podiatrist that the Veteran's sural nerve may have been damaged during her 2008 VA surgery are not legally adequate, as neither contain a supported conclusion that this neurological injury was the result of VA fault or an event not reasonably foreseeable, and the latter opinion's use of the equivocal term "may" negates the legal adequacy of the opinion as speculation cannot serve to substantiate a claim. Thus, the Board accords these opinions no probative weight.

Conversely, the 2016 IME's conclusion that the Veteran did not incur a neurological injury during her 2008 surgery is supported by the record and consistent with all clinical findings of record. Furthermore, the IME's opinion that the Veteran's additional disability resulting from her 2008 surgery, evidenced by her reported increase in subjective symptomatology, was not the product of VA fault or an event not reasonably foreseeable, is comprehensive, addresses all implicated legal fault concepts, is consistent with the record, and is unequivocally stated. Thus, the Board accords this medical opinion great probative weight. As such, the fault or foreseeability element of the section 1151 claim is not substantiated.

The Board notes that additional development is being request in the remand section for other claims on appeal, to include obtaining updated VA treatment records. This development will most likely not result in any relevant evidence for this claim; thus, a remand is not necessary as the evidence is sufficient for deciding the claim.

In sum, as the more probative medical opinion of record fails to support the Veteran's claim, the Board concludes that the preponderance of the evidence is against her claim seeking VA compensation per 38 U.S.C.A. § 1151; there is no doubt to be resolved, and the award of such compensation is not warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

New and material evidence having been presented, the previously-denied claim of service connection for a psychiatric disorder is reopened.

Service connection for a persistent depressive disorder, as secondary to service-connected bilateral plantar fasciitis, is granted. 

Compensation under 38 U.S.C.A. § 1151 for additional disability, claimed as resulting from surgery performed at a VAMC on March 4, 2008 to treat service-connected plantar fasciitis of the left foot, is denied. 


REMAND

During her January 2016 Board hearing, the Veteran testimony indicates that her service-connected fibrocystic breast disease may have increased in severity since her most recent related VA examination, which was performed in October 2008. In light of these circumstances, a new VA examination to assess the current severity of this service-connected disability is warranted. 

Moreover, the Veteran's recent, outstanding VA treatment records should be obtained, as they likely contain treatment germane to this increased rating claim. 

Furthermore, as referenced above, the Veteran's asserts that she is unable to maintain employment due, inter alia, to her service-connected fibrocystic breast disease; thereby implicitly raising a claim of entitlement to a TDIU. (Given the RO's recent award of an increased 50 percent rating for the Veteran's service-connected bilateral plantar fasciitis, raising the Veteran's overall combined disability rating to 80 percent, the Veteran is now eligible for schedular TDIU consideration.) Remand of the TDIU claim is also warranted for the Veteran to provide employment history information and for the RO to consider the claim.

Accordingly, these issues are REMANDED for the following actions:

1. Provide the Veteran with VA Form 21-8940 and ask her to complete and return it.

2. Obtain the Veteran's VA treatment records dated since August 2016. 

3. Schedule the Veteran to undergo a VA examination to determine the current severity of her service-connected fibrocystic breast disease. The examiner must be provided access to the Veteran's claims file for review.

After reviewing the Veteran's claims file and eliciting a history of her breast disease symptoms, the examiner is to conduct a relevant clinical examination to determine the current severity of her fibrocystic breast disease. 

The examiner is also asked to describe the impact the Veteran's breast disease currently has on her ability to perform her duties in her former career as an office worker (with job titles such as receptionist, customer service representative, and billing and registration agent).

4. Finally, readjudicate the Veteran's claims seeking an increased rating for fibrocystic breast disease and a TDIU. If the full benefit sought with regard to either claim remains denied, issue a supplemental statement of the case and return the case to the Board. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112.




______________________________________________
RYAN T. KESSEL
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs