﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 201114-120120
DATE: January 29, 2021

ORDER

Entitlement to an initial rating in excess of 60 percent for service-connected coronary artery disease (CAD) with acute subacute, old myocardial infarction status post stent (claimed as heart condition) (hereinafter CAD) effective June 8, 2019, is denied.

FINDING OF FACT

Metabolic equivalent (MET) testing shows the Veteran develops dyspnea at a workload of greater than 3 but not greater than 5 METs; MET testing shows the Veteran did not develop this symptom at a workload of 3 METs or less; and, the evidence did not show chronic congestive heart failure or left ventricular dysfunction with an ejection fraction of less than 30 percent.

CONCLUSION OF LAW

The criteria for entitlement to an initial rating in excess of 60 percent for service-connected CAD effective June 8, 2019, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.3, 4.100, 4.104, Diagnostic Code (DC) 7005.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from October 1955 to September 1959.

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from an August 2020 rating decision issued by the Department of Veterans’ Affairs (VA) Regional Office (RO).

By way of background, the RO denied service connection in an October 2019 rating decision. Following additional development, the RO granted service connection and assigned a rating of 60 percent disabling effective June 8, 2019, in the August 2020 rating decision. In the Veteran’s November 2020 VA Form 10182, Decision Review Request: Board Appeal, he elected the Direct Review docket. Therefore, the Board may only consider the evidence of record at the time of the Agency of Original Jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

Entitlement to an initial rating in excess of 60 percent for service-connected CAD effective June 8, 2019, is denied.

The Veteran contends his CAD and symptoms related thereto should be assigned a higher disability rating. The Board finds an initial rating in excess of 60 percent is not warranted.

Disability evaluations are determined by the application of a schedule of ratings that is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R., Part 4. Where there is a question as to which of two disability evaluations shall be applied, the higher evaluation is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. The Veteran’s entire history is reviewed when making disability evaluations. See Schafrath v. Derwinski, 1 Vet. App. 589 (1995). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3. 

Where the question for consideration is the propriety of the initial evaluation assigned, evaluation of the medical evidence since the grant of service connection and consideration of the appropriateness of a “staged rating” (assignment of different ratings for distinct periods of time, based on the facts found) is required. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided; separate ratings may be assigned for distinct disabilities resulting from the same injury only where the symptomatology for one condition is not duplicative or overlapping with the symptomatology of the other condition. See 38 C.F.R. § 4.14; see also Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994).

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of his symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). 

CAD is rated pursuant to 38 C.F.R. § 4.104, DC 7005, for arteriosclerotic heart disease (CAD). Under DC 7005, a 10 percent rating is warranted where a workload of greater than 7 METs but not greater than 10 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; continuous medication required. A 30 percent rating is warranted where a workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; evidence of cardiac hypertrophy or dilation on electrocardiogram, echocardiogram, or X-ray. A 60 percent rating is warranted for more than one episode of acute congestive heart failure in the past year, or; workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of 30 to 50 percent. A 100 percent rating is warranted for chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent.

One MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. 38 C.F.R. § 4.104, Note (2). When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. Id.

For the purposes of a 60 percent evaluation, the rating criteria do not require a separate showing of left ventricular dysfunction in addition to an ejection fraction of 30 to 50 percent. Otero-Castro v. Principi, 16 Vet. App. 375, 382 (2002). Additionally, the phrase “30 to 50 percent” means 30 percent through 50 percent. Id. at 380.

For the purposes of a 100 percent evaluation, the rating criteria do not require a separate showing of left ventricular dysfunction in addition to an ejection fraction of less than 30 percent. See id. at 382.

Turning to the relevant evidence of record, in September 2019, the Veteran was found to be “doing very well” from a cardiac respect. See September 2019 VA treatment records. He was noted to be currently free of symptoms of myocardial ischemia. Id. Treatment records in October 2019 reference continued monitoring from a cardiac standpoint. See October 2019 VA treatment records.

The Veteran was afforded a VA examination in July 2020 to determine the nature and etiology of any heart condition and its relation, if any, to service. The examiner noted the Veteran had a diagnosis of acute, subacute, or old myocardial infarction, CAD, and had a stent placement. See July 2020 VA examination. The examiner noted the Veteran’s current symptoms include dyspnea and fatigue with physical activity. Id. The Veteran’s myocardial infarction was noted to have occurred in 1998. Id. Neither congestive heart failure nor arrhythmia were indicated. Id. The Veteran did not have a heart valve condition or any infectious cardiac conditions. Id. Pericardial adhesions were not found. Id. A surgical procedure, percutaneous coronary intervention, was indicated in 1998 due to CAD. Id. The Veteran was found to not have any other hospitalizations for treatment of a heart condition. Id. 

In association with the examination, the Veteran completed a transthoracic echocardiogram in July 2020 revealing evidence of cardiac dilatation with normal left ventricular systolic function with an ejection fraction of 55-60 percent. See July 2020 VA examination report. Interview-based METs testing was completed resulting in dyspnea developed at a workload of greater than 3 but less than 5 METs. Id. The METs level provided was found to be solely due to the Veteran’s claimed heart conditions. Id. 

At the outset, the Board notes the Veteran was rated based on the date of receipt of claim or June 8, 2019. In general, the effective date for an initial grant of service connection is the day following the date of separation from active service or the date entitlement arose, if the claim is received within one year after separation from service, or a claim reopened after final disallowance. Otherwise, it is the date of receipt of claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. The Veteran separated from service in 1959. While he described experiencing symptoms that have been causally related to his current condition, the regulations regarding effective date are compulsory. Thus, the effective date for his benefits in relation to this claim is bound by regulations to be the date of receipt of claim as it is later than the date entitlement arose. While the regulations provide for an exception to effective dates, allowing for retroactive benefits when a Veteran becomes permanently and totally disabled for at least 30 days immediately following the date in which the Veteran became permanently and totally disabled, said exception is not applicable in this case as the Veteran has not become permanently and totally disabled. As such, the period on appeal begins June 8, 2019.

The Board finds the July 2020 VA examination included consideration of the Veteran’s medical history and set forth all pertinent findings, such that the Board is able to make a fully informed decision. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007). When considered together and with the entire evidence of record, the Board finds the examination report sufficient for adjudication of the severity of the Veteran’s heart condition. The Board notes the VA report lacked reference to the Veteran’s previous hospitalization in March and April 2019 during which a stent was placed. This exclusion, however, does not prevent the Board from ascertaining the necessary information for a rating under the DCs during the entire period on appeal. See Nieves Rodriguez v. Peake, 22 Vet. App. 295 (2008) (holding “when entitlement to compensation has already been established and an increase in the disability rating is at issue claims file review may be irrelevant to the medical issue at hand”). The information regarding the Veteran’s hospitalization is ascertainable from the medical evidence of record. More importantly, however, the hospitalization falls outside the appeal period which began as previously mentioned on June 8, 2019, over a month after discharge. 

Considering all relevant evidence of record, the Board finds the Veteran’s CAD more nearly approximates a disability rating of 60 percent under DC 7005. The Board finds the METs testing to be highly probative that the Veteran develops dyspnea at a workload of greater than 3 but less than 5 METs. This finding corresponds to the criteria for a 60 percent rating under DC 7005. While the Veteran is competent to report his symptoms such as fatigue and dyspnea, the rating criteria under DC 7005 reference results from testing and diagnoses that require specialized medical knowledge and training. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Thus, the Board relies upon the competent and credible medical evidence of record discussing the testing and diagnoses referenced under the DCs for rating purposes.

A higher 100 percent rating is not warranted unless there is chronic congestive heart failure, or; workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or; left ventricular dysfunction with an ejection fraction of less than 30 percent. The record lacks reference to chronic congestive heart failure. Further, as previously mentioned, the Veteran’s METs testing revealed dyspnea at a workload of greater than 3 but less than 5 METs. Additionally, the Veteran’s highly probative echocardiogram results from 2020 revealed a left ventricular systolic function with an ejection fraction of 55-60 percent, which is greater than the threshold required for a 100 percent disability rating. Thus, the Board concludes that the preponderance of the evidence is against a finding that the Veteran’s CAD met the criteria corresponding to a higher 100 percent rating.

While the Veteran’s VA examination indicated the Veteran also has myocardial infarction which is rated under DC 7006, the rating criteria for DC 7006 is nearly identical to that of DC 7005. Specifically, the 60 percent disability rating criteria under DC 7005 are identical to DC 7006. A 100 percent rating under DC 7006 is warranted for the period during and for three months following myocardial infarction, documented by laboratory testing. The record lacks any reference to myocardial infarction documented by laboratory testing during the entire period on appeal. Consequently, the preponderance of the evidence is against an alternative increased rating under DC 7006.

Based on the aforementioned, the Board finds the preponderance of the evidence is against an initial rating in excess of 60 percent for CAD during the entire period on appeal. As such, the benefit-of-the-doubt doctrine is not for application and the claim must be denied. 38 U.S.C. § 5107 (b); see also Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990). 

 

Shereen M. Marcus

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A.C. Allen, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.