﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 201029-121498
DATE: April 30, 2021

ORDER

Entitlement to service connection for hypertension due to herbicide exposure is denied.

Entitlement to service connection for arrhythmia due to herbicide exposure is denied.

Entitlement to service connection for congestive heart failure due to herbicide exposure is denied.

FINDINGS OF FACT

1. The preponderance of the evidence shows the Veteran was not exposed to herbicide agents during service. 

2. The Veterans hypertension, congestive heart failure, and arrhythmia did not have their onset in service or within one year of service, and the record contains no indication that they are otherwise related to service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for hypertension due to herbicide exposure have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for entitlement to service connection for arrhythmia due to herbicide exposure is denied. have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for congestive heart failure due to herbicide exposure have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served in the United States Army from March 1968 to February 1970. 

This matter comes to the Board of Veterans’ Appeals (Board) on appeal from an October 2019 rating decision issued by a VA Regional Office (RO).

By way of background, the Veteran filed his initial claim for service connection for hypertension, congestive heart failure and arrythmia in March 2019. Subsequent to a September 2019 rating decision denying his initial claims, the Veteran requested a Higher-Level Review by the RO. The Veteran’s claims were once again denied in a rating decision dated in October 2019. 

In a timely filed October 2020 VA Form 10182, Decision Review Request: Board Appeal, the Veteran elected the Evidence Submission docket.

Therefore, the Board may only consider the evidence of record at the time of the agency of original jurisdiction (AOJ) decision on appeal, as well as any evidence submitted by the Veteran or his representative with, or within 90 days from receipt of, the VA Form 10182. 38 C.F.R. § 20.303.

The Board notes, since the filing of his VA Form 10182 the Veteran, through his representative, has timely submitted new evidence for the Board to consider. This evidence was considered in the decision as noted below in contrast to the Board’s February 2021 decision in which a vacatur was subsequently granted in April 2021. 

The Board has limited the discussion below to the relevant evidence required to support its finding of fact and conclusion of law, as well as to the specific contentions regarding the case as raised directly by the Veteran and those reasonably raised by the record. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015); Robinson v. Peake, 21 Vet. App. 545, 552 (2008).

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. To establish service connection for a disability, the veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

A veteran who served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean Demilitarized Zone (DMZ) in an area in which herbicide agents are known to have been applied during that period shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. 38 C.F.R. § 3.307 (a)(6)(iv).

Service connection for hypertension, congestive heart failure, and arrythmia is denied. 

The Veteran asserts that his hypertension, congestive heart failure, and arrythmia (heart conditions) are related to herbicide agent exposure during service in Korea. Specifically, he asserts that he served near the demilitarized zone (DMZ) where herbicide agents are known to have been used. 

The Veteran’s military personnel records reflect that he served with the HHC 7th Infantry Division as a staff officer in Korea from May 1969 to February 1970. There is no indication in any of the Veteran’s military personnel records that any of his duties put him at or near the DMZ. 

A September 2019 memorandum from the Joint Services Records Research Center (JSRRC) stated they reviewed the unit history of the 7th Infantry Division (HHC, 7th Inf. Div.) during the Veteran’s service period in Korea. The records document that the unit was located at Camp Casey, South Korea several miles south of the DMZ. The records do not document the use, storage, spraying or transporting of tactical herbicides to include Agent Orange at Camp Casey. In addition, the records did not mention or document any specific duties performed by members of the HHC, 7th Inf. Div. along the DMZ. 

Although the Veteran’s tour of duty fell within the time frame from April 1968 to August 1971 (when use of herbicide agents on the DMZ is acknowledged), his unit is not on the list of units that are recognized as having exposure to Agent Orange while in the DMZ area. The regulatory presumption only applies to units which the Department of Defense (DOD) has determined were in areas in or near the DMZ in areas it is known that herbicide agents were used. 

In contrast, the Veteran submitted argument with citations to various online articles indicating that Camp Casey is approximately twelve or thirteen miles from the DMZ. The Veteran, through his representative, therefore, contends that the Veteran was stationed “near” the DMZ and exposure to herbicide agents should be conceded. In support of this contention, the Veteran references several prior Board decisions which have granted service connection on a presumptive basis for other veterans who have served at Camp Casey. The Veteran also references VA’s Adjudication Procedures Manual M21-1 stating that several units that VA presumes to have been exposed to herbicides in Korea belonged to the 7th Infantry Division, which, incidentally, does not include his specific unit. But see Overton v. Wilkie, 30 Vet. App. 257, 264 (2018) (acknowledging the Board is not bound by procedure manuals and Fast Letters, such as the M21-1). 

The Board is not persuaded by the Veteran’s submitted statements and evidence thus, herbicide exposure is not conceded. 

The Board has reviewed the Veteran's lay statements in the record regarding his contended exposure and finds that he cannot opine on whether he was exposed to herbicide agents. His statements alone are not credible or competent evidence of herbicide agent exposure. See Bardwell v. Shinseki, 24 Vet. App. 36, 40 (2010) (holding that a layperson's assertions indicating exposure to gases or chemicals during service are not sufficient evidence to establish that such an event occurred during service).

While the Veteran is competent to report his experiences (i.e. duties in or near the DMZ), it is incongruous with the official service records and the JSSCR findings. There is no official documentation that the Veteran had duties in or near the DMZ and the Veteran does not contend as such. Specifically, the Veteran has not contended what his duties entailed during service in Korea that would not have been considered by the DOD as an infantry officer. Rather, his sole contention appears to be that he was stationed at Camp Casey and therefore, was exposed to herbicides which is contrary to the probative evidence of record. 

The Board finds the contemporaneous documentation of record showing no service in or near the DMZ more probative than the Veteran's current belief he was exposed to herbicides while performing staff officer duties near the DMZ. The Board finds that the Veteran's statements, provided more than 40 years after the alleged exposure, are insufficient to establish exposure to herbicide agents during his service while stationed in Korea.

Moreover, the reference to prior Board decisions that have found herbicide exposure for veterans who served at Camp Casey is misguided. Board decisions are not precedential and with good reason. Each Board decision is based on a case-by-case fact pattern of the specific claimant. Notably, 38 C.F.R. § 20.1303 states, "Although the Board strives for consistency in issuing its decisions, previously issued Board decisions will be considered binding only with regard to the specific case decided." Instead, "each case presented to the Board will be decided on the basis of the individual facts of the case in light of applicable procedure and substantive law." Id. Even if the Board were to consider the prior decisions, they can be differentiated from the present case. The cases referenced by the Veteran’s representative all involve detailed lay statements of the veterans’ duties including travel within Korea. Here, the Veteran has not provided any details concerning his duties as a staff officer in the Army while stationed at Camp Casey other than those already considered by the DOD. There is no contention that he traveled, trained, or performed other duties throughout Korea including areas near the DMZ other than stating that he served at Camp Casey. The Board notes once again, the DOD has never found that all veterans who served at Camp Casey in Korea to have been exposed to herbicide agents. 

It is further noted that the phrase “in or near” the DMZ has never been defined by statute, VA, or the DOD, nor is the Board bound by VA procedures outlined in M21-1. See Overton v. Wilkie, 30 Vet. App. 257 (2018); see also Kennedy v. Wilkie, 33 Vet. App. 114, 125 (2020) (holding the Board is bound by “applicable statutes, regulations of [VA], and precedent opinions of the General Counsel of [VA]. The Board is not bound by Department manuals, circulars, or similar administrative issues.”). Instead, this phrase is meant to guide the Board in its adjudication of claims on a case by case basis while considering the evidence as a whole in instances such as here, when the DOD has not specifically found that a veteran’s unit was exposed to herbicide agents in Korea. It is further noteworthy that while the Board is not bound by VA’s M21-1, the M21-1 provision cited by the Veteran’s representative does not list the Veteran’s specific unit as being exposed to herbicide agents during service in Korea. Thus, even if considered by the Board, the provision cuts against the Veteran’s claim. 

Quite simply, the preponderance of the evidence weighs against the Veteran’s contention that he was exposed to herbicides during his military service. Based on the foregoing, service connection for hypertension, congestive heart failure, and arrythmia on a presumptive basis or based on claimed herbicide exposure is not warranted.

Consideration has been given to the fact that the claim can still be reviewed to determine if service connection can be established on a direct basis, even if a veteran is found not to be entitled to a regulatory presumption of service connection. See Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

The Veteran has not claimed, and the evidence does not otherwise suggest, that his heart conditions began during service or within one year of service discharge.

The Veteran’s service treatment records (STRs) include no complaints of, treatment for, or diagnoses of hypertension, congestive heart failure, or arrhythmia in service, nor do they show that there were any manifestations of the conditions beginning in service. The post-service medical evidence does not document any heart conditions within the one-year presumptive period following separation of service. Private treatment records indicate the Veteran was first diagnosed and treated for congestive heart failure and hypertension in September 2016. He was later diagnosed with heart arrhythmia in October 2016. Therefore, all claimed heart conditions began over 40 years after service. No medical professional has attributed the Veteran's diabetes and neuropathy to his service, nor is the Veteran competent to assert such a link. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007).

As such, service connection on a direct basis is not warranted.

The Board notes that the Veteran has not been afforded a VA examination to aid in substantiating this claim; however, the Board finds no duty to obtain one in this case. Other than filing his claim seeking entitlement to service connection for hypertension, congestive heart failure and arrythmia, the Veteran has offered only one explanation as to how his conditions relate to service, namely herbicide exposure. His service treatment records are silent as to any complaints, treatment, or diagnoses related to heart conditions. The only evidence offered by the Veteran besides lay statements that he was exposed to herbicides is that of private medical records indicating that he is currently diagnosed with several heart conditions as of September and October 2016. Again, the Board finds the contemporaneous documentation of record showing no service in or near the DMZ more probative. As such, given the lack of an in-service incurrence or evidence indicating that there may be a nexus between the current disability and service, the Board finds that a VA examination is not warranted. 38 C.F.R. § 3.159 (c)(4); McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for hypertension, congestive heart failure, and arrythmia and the claim must be denied. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

 

SHEREEN M. MARCUS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. F. Minnitte, Attorney Advisor

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.